In re Margaret C. PETERS d/b/a M.C. Peters Construction Company, Debtor.

S.J. GROVES & SONS COMPANY, Individually and on behalf of all other similarly situated, Plaintiff,

v.

Margaret C. PETERS, Individually and d/b/a M.C. Peters Construction Company, Defendant.

Bankruptcy No. 87–00048.
Adv. No. 87–0062.

United States Bankruptcy Court, N.D. New York.

April 6, 1988.

---

Bryant, O'Dell & Basso, Syracuse, N.Y., for plaintiff; Linda E. Alario, of counsel.

Melvin and Melvin, Frank Vavonese, Syracuse, N.Y., for defendant; Louis Levine, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

On October 27, 1987, the Court heard oral argument of three motions brought on by S.J. Groves & Sons Company ("Groves") and Margaret C. Peters, d/b/a M.C. Peters Construction Company ("Debtor") within the adversary proceeding initiated by Groves on behalf of itself and those similarly situated against the Debtor and three banks in the Debtor's bankruptcy case.[1] Pursuant to Article 3–A of the New York Lien Law (McKinney 1966 & Supp. 1988) ("Article 3–A" or "Lien Law") and Section 523(a)(4) of the Bankruptcy Code, 11 U.S. C.A. §§ 101–1330 (West 1979 & Supp.1987) ("Code"), Groves commenced said adversary proceeding to recover as nondischargeable debts allegedly diverted trust fund monies arising out of two subcontracts with the Debtor in connection with two public improvement construction contracts it had executed with the New York State Department of Transportation ("DOT").

Groves seeks to conditionally maintain its adversary proceeding as a class action pending an accounting by the Debtor of the alleged trusts to substantiate the class action numerosity requirement. By way of her first motion for summary judgment, the Debtor requests the dismissal of all claims under Article 3–A and Code § 523 brought by Groves in an individual and representative capacity, the dismissal of the claims against the defendant banks and the reduction of Groves' claim from $107,-890.00 to $9,097.24. The Debtor's second motion seeks leave to file an amended an-

---

1. In a Memorandum–Decision dated March 3, 1988, the Court dismissed the banks as defendants from Groves' complaint pursuant to 28 U.S.C.A. § 1334(c)(1) (West 1979 & Supp.1987).

swer and counterclaim which, *inter alia,* brings in claims for work under a similar third subcontract, seeks to dismiss Groves' complaint, demands indemnity, contribution and judgment of almost $223,000.00 (an increase of $150,000.00 from her original answer) from Groves, Lien Law relief for herself and Groves' co-plaintiff class and the disallowance of Groves' claim in her bankruptcy case.

## FACTS

The Debtor operates a sole proprietorship, a landscaping business, in Canastota, New York. She entered into three subcontracts with Groves in May and June of 1983 to perform certain labor and furnish material for the construction and completion of public highways in Onondaga County, New York. Each of these subcontracts were part of three separate contracts Groves, as the general contractor, had executed with DOT: D250416, D250417 and D250094.[2]

Due to disputes over payment and work quantities, the Debtor stopped working on D250416 and D250417 sometime in October 1985. In June 1986, Groves informed the Debtor that it was attempting to expedite completion and final payment of D250416 and D250417. Groves received the final payment check from DOT for D250094 on August 25, 1986.

On January 14, 1987, the Debtor filed a voluntary petition under Chapter 11 of the Code and on February 27, 1987 filed the required Schedules and Statements. Debtor's schedules recited some $350,437.00 (sic) in debt and $249,276.00 in property. The Debtor listed six creditors having priority with a total of almost $120,000.00 in claims: four creditors were union or pension-related entities and the remaining two were the federal and state tax authorities in connection with withholding and unemployment tax. She listed three secured creditors holding four claims in the aggregate of approximately $124,284.00. The balance of some $116,394.00 was owed to unsecured creditors holding eighteen claims of which two, totaling $25,000.00 (to Hogeboom & Campfield, Inc. and Menter, Rudin & Trivelpiece, P.C.), were described as contingent, unliquidated or disputed.

The Debtor also included in her Schedule B–3—"Property Not Otherwise Scheduled" —two pending lawsuits with Triple Cities Construction Company, Inc. and Groves, valued at $30,000.00 and $75,000.00, respectively. After Groves denied being a party to any pre-petition lawsuit, the Debtor admitted the "mistaken scheduling of her claim against S.J. Groves as 'lawsuits pending' instead of 'claims outstanding.' " Reply Memorandum of Defendant Margaret C. Peters, at para. f (Oct. 26, 1987).

The meeting of creditors and equity security holders pursuant to Code § 341 was held on March 24, 1987. The Court, on March 3, 1987, fixed June 22, 1987 as the last day to file proofs of claim, Federal Rule of Bankruptcy Procedure ("Fed.R. Bankr.P.") 3003(c)(3), and May 23, 1987 became the last day to file a dischargeability complaint under Code § 523(c). Fed.R. Bankr.P. 4007(c).

Between March 2 and December 17, 1987, eight proofs of claim were filed in the Debtor's case: 1) Menter, Rudin & Trivelpiece, P.C., filed March 2, 1987, $5,079.85 for legal services in Triple Cities Construction Co., Inc. litigation, 2) Onondaga County Laborer's Health and Welfare, Pension and Annuity Funds Local 333, filed March 20, 1987, $8,464.53 based on collective bargaining agreement, 3) Parlor City Contracting Company, filed March 26, 1987, $1,235.37 for labor, materials and equipment on an open account which became due on May 30, 1985, 4) Marine Midland Bank, N.A., filed March 31, 1987, $54,184.69 for monies loaned debtor based on six promissory notes, 5) Louis J. Bruno, filed May 22, 1987, $2,566.39 for office space, 6) Groves, filed May 19, 1987, "$136,000.00 approx." for breach of contracts, 7) New York State

---

**2.** Groves' complaint is based on the subcontracts involved with D250416 and D250417, executed with the Debtor on May 11 and June 16, 1983, respectively. Debtor's counterclaim speaks to the subcontract under D250094, executed between itself and Groves on May 31, 1983. For ease of reference, each subcontract will be referred to by the number of the DOT contract it is associated with.

Department of Tax, filed June 8, 1987, $5,049.16 for unemployment insurance contributions plus interest from January 1, 1985 through December 31, 1986 and 8) Engineers Joint Benefit Funds, filed December 17, 1987, $432.00 based on collective bargaining agreement.

On May 14, 1987, the Court entered an Order extending the time Groves could file a Code 523(c) complaint to thirty days after the date of the Debtor's examination pursuant to Fed.R.Bankr.P. 2004. On May 26, 1987, the Debtor turned over to Groves its books and records regarding funds received and disbursed under D250416, D250417 and D250094 and was examined at the offices of Groves' counsel in Syracuse, New York on June 26 and July 2, 1987.

On July 7, 1987, Groves commenced the underlying adversary proceeding as a class action under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 23(a), (b)(1)(B) and (b)(3) and Fed.R.Bankr.P. 7023 for the plaintiff class of trust beneficiaries for which the debtor was the Article 3–A trustee under D250416 and D250417. Groves alleges that all the prerequisites for a class action are present, as mandated by § 77(1) of Article 3–A and Fed.R.Civ.P. 23(a), but admits not knowing the exact number of class members. It estimates the class size as not less than thirty-five, meeting the impracticably numerous requirement of Fed.R.Civ.P. 23(a). Groves asks the Court to make a determination of whether the action could be maintained as a class action.

As against the Debtor, Groves requests the following relief: an accounting of the total monies received in D250416 and D250417, that those monies constitute trust funds for which Debtor was the trustee and the beneficiaries were those entities who rendered services and material thereunder, for the determination and allocation of the rights and interests of such creditors and claimants under such trust funds, and the determination of the amounts diverted from the Debtor's unauthorized payment or transfer of assets and of their nondischargeability under Code § 523(a)(4).

In her answer filed August 20, 1987, the Debtor denied the existence of any of the procedural requirements of Fed.R.Civ.P. 23 and admitted that Article 3–A requires trust actions to be brought as class actions. The Debtor affirmatively defended Groves' complaint by claiming the Court lacked subject matter jurisdiction, that Groves' action was untimely filed and did not state a claim upon which relief should be granted, that Groves lacked standing to bring the present suit because it was neither a beneficiary nor a subrogee of the Article 3–A trusts, that the dischargeability action could not proceed as a class action and that Groves was not a proper party to prosecute a class action under New York Lien Law or the Code. The Debtor also claimed that no judgment should issue for any part of Groves' requested relief until the merits of her counterclaims were determined since any failure on her part to pay trust claims was due to Groves' breach of contract and/or trust fund diversion or defalcation. Absent the dismissal of Groves' complaint, she requested Article 3–A relief for herself and the co-plaintiff class and, individually, contribution, indemnity and damages of $150,000.00.

Groves denied all the Debtor's counterclaims in its Reply, filed September 4, 1987, admitting only that the monies it received under D250416 and D250417 constituted trust funds under Article 3–A. In six affirmative defenses, Groves charged that 1) the Debtor's pleading did not state a claim upon which relief could be granted, 2) it had paid the Debtor all the sums the latter was entitled to under D250416 and D250417, 3) the Court lacked subject matter jurisdiction over the counterclaims, 4) the written subcontracts provided for any breaches to be resolved through arbitration, 5) the Debtor's counterclaims arose from her dispute with DOT over payment quantities and that each subcontract agreement provided for Groves' representation to DOT of said dispute; that Groves had advised the Debtor of these procedures who, in failing to provide the necessary information, waived or was estopped from asserting said claims against Groves and 6) the counterclaims were time-barred.

Hence, Groves asked that the Debtor's counterclaims be dismissed.

Groves filed its notice of motion for conditional class certification on September 4, 1987, followed by its filing of an amended notice of motion on September 10, 1987. On October 16, 1987, the Debtor filed her notice of motion for summary judgment and four days later filed a notice of motion with respect to an amended answer and counterclaim. On November 3, 1987, the Debtor filed a disclosure statement and a plan of reorganization. Upon objections, she filed an amended disclosure statement on March 11, 1988, which the Court approved March 29, 1988. A plan has yet to be confirmed.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over these contested matters by virtue of 28 U.S.C.A. §§ 1334(b) and 157(a) (West 1979 & Supp. 1987). These are core proceedings, 28 U.S. C.A. § 157(b)(1) and (b)(2)(A), (B), (C), (I) and (O) (West 1979 & Supp.1987), rendered in accordance with Fed.R.Bankr.P. 9014, 7023, 7015, 7013, 7056 and 7052.

## DISCUSSION AND CONCLUSIONS OF LAW

At the outset, the Court notes that its rulings on the motions contained herein only resolve those issues necessary to dispose of each motion. All other questions of law and fact are to be adjudicated in further motion practice, settlement proceedings or at trial. In addition, since the Debtor's motion for summary judgment was filed only four days before her motion for leave to amend the answer and counterclaim, the Court will consider the latter motion first in the interests of judicial economy and in keeping with the liberal practice of pleading under the federal rules. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Moreover, Groves has demonstrated that no undue prejudice would flow from this reordering by responding in its papers throughout these proceedings to both of the Debtor's motions *Accord Rossiter v.*

*Vogel*, 134 F.2d 908, 912 (2d Cir.1943); 6 MOORE'S FEDERAL PRACTICE. ¶¶ 56.-02[4], 56.12 (2d ed. 1987).

## I. GROVES' MOTION

Groves claims that § 77(1) of Article 3–A requires an action to enforce a trust to be brought in a representative capacity in compliance with Article 9 of the New York Civil Practice Law and Rules (McKinney 1976 & Supp.1988) ("CPLR"). While acknowledging the applicability of Fed.R. Civ.P. 23 to this federal proceeding, it urges the Court to consider the liberal construction New York courts have accorded the numerosity requirement in enforcing Article 3–A trusts, since it is the only class action element it alleges to have insufficient information about.

Groves contends that an order directing an accounting by the Debtor is neither inappropriate nor burdensome, in light of her admitted lack of book and record keeping as required by Article 3–A and her commingling of various subcontract monies. With regard to the lack of proofs of claim individually filed by those Groves seeks to include in the plaintiff class, Groves claims that these parties were not given adequate notice of the Debtor's filing. Thus, it charges that the substantive rights of these trust beneficiaries were cut off, rendering Fed.R.Bankr.P. 4007(c) inapplicable. Groves urges the Court to set a new time frame within which, upon certification and after notice, those class members identified in the accounting can file individual proofs of claim. In the event it is not successful, Groves requests that those entities identified in the accounting still be given the opportunity to file individual proofs of claim as ordered by the Court. Groves asserts that its own trust claims total approximately $107,890.00.

In response, the Debtor charges that Groves has not met its burden of proof in satisfying the requirements of Fed.R.Civ.P. 23, irrespective of New York Lien Law, which is irrelevant in this federal forum chosen by Groves. The Debtor asserts that the number of potential class members is "miniscule" and that there are no com-

mon issues of fact. She states that Groves' claim is atypical of the claims of the other members of the proposed class in terms of injury and interest since Grove's dischargeability claim is the only one not time-barred. Debtor states that class actions are not permitted for dischargeability actions especially where the plaintiff representative is a subrogee and not a beneficiary and hence not a proper party. The Debtor also notes her counterclaim, which, if successful, would defeat Groves' entire claim and be disbursed to and shared by other trust beneficiaries whom Groves wants to include in the plaintiff class. She accuses Groves of propagating an "inherent conflict of interest" between itself and the plaintiff class it proposes to represent, demonstrating Groves' inability to vigorously prosecute the entire class action.

The Debtor states that any accounting at this point will not provide Groves with any more information to identify the potential plaintiff class than it already has. The Debtor cites to the depth of the Fed.R. Bankr.P. 2004 examination, where Groves had her books for a month and deposed her for two days. She also points to Groves now knowing exactly what and to whom it will pay with respect to claims for labor and materials on its payment bond under the subcontracts (which terminated in 1985) due to the notice requirements and statute of limitations of the New York State Finance Law (McKinney 1979 & Supp.1988). Thus, the Debtor characterizes Groves' accounting request as unnecessary, redundant and a form of harassment.

Furthermore, the Debtor claims estoppel since Groves paid her with checks from commingled proceeds, which accounts for her own inability to trace disbursements from a particular project and renders a further accounting impossible without Groves supplying pertinent allocation data. She also maintains that she is fully able to state the names of all the persons she has contracted with under the three subcontracts. The Debtor asks the Court to conduct an evidentiary hearing to determine class certification should it not summarily deny class certification.

At the hearing, in response to the Court's question as to why it is so concerned with other potential trust fund claimants under Article 3–A, Groves said that it acted as a surety by posting a payment bond, as required by law, on those jobs so that all those entities unpaid under the subcontracts "come to us." The Debtor countered that under § 137 of the New York State Finance Law, any claimants not sending the required statutory notice of their claims within ninety days to the principal contractor would be time-barred. Groves answered that because the Debtor had delayed final payment from the state, no statute of limitations had begun to run.

In denying Groves' motion, the Court finds merit in much of the Debtor's argument. First, the Court acknowledges that while a Lien Law dispute must initially be brought in a representative capacity, it can only be maintained in that form if the applicable procedural prerequisites are met. *Truax & Hovey Ltd. v. Grosso (In re Grosso)*, 9 B.R. 815 (Bankr.N.D.N.Y.1981). Furthermore, the precatory language of § 77(1) of Article 3–A, its liberal construction by the New York courts, and the discretionary import of the 1985 amendments (which the Court questions the applicability of to subcontracts executed in 1983) are in stark contrast to the "rigorous analysis" mandated by Fed.R.Civ.P. 23(a), incorporated by Fed.R.Bankr.P. 7023, wherein none of the required elements can be presumed. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir. 1986). Since CPLR § 901 and Fed.R.Civ.P. 23 are procedural statutes, this federal forum is bound to follow, under the policies underlying the rule of *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965). *See also* 3B MOORE'S FEDERAL PRACTICE, *supra*, ¶ 23.02[5] at 23–72 (Being a valid procedural rule and neither a limitation upon nor an expansion of jurisdiction, Rule 23's provisions, and not state law, control). Accordingly, Groves must satisfy the stricter stan-

dard of Fed.R.Civ.P. 23 to prevail on its motion.

▮ A predicate to bringing a class action on behalf of creditors in an adversary proceeding, triggering the Fed.R. Civ.P. 23 inquiry, is a finding that each member of the potential class could have brought the adversary proceeding individually. In a dischargeability context, this includes timeliness with regard to the filing of an individual proof of claim and the cause of action under Code § 523. No provision of the Code or the Bankruptcy Rules authorizes the filing of a class proof of claim. See Fed.R.Bankr.P. 2019(a), 3003(c). *See Huddleston v. Holland (In re American Reserve Corp.)*, 71 B.R. 32, 34 (N.D.Ill.1987); *Lazard v. Texaco Inc. (In re Texaco Inc.)*, 81 B.R. 820, 826–827 (Bankr. S.D.N.Y.1988). *See also Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.)*, 817 F.2d 625, 630–632 (10th Cir.1987); *Novak v. Callahan (In re GAC Corp.)*, 681 F.2d 1295, 1298–1299 (11th Cir. 1982) (Act case); *In re Baldwin–United Corp.*, 52 B.R. 146, 149 (Bankr.S.D.Ohio 1985); *In re Grocerland Coop., Inc.*, 32 B.R. 427, 436 (Bankr.N.D.Ill.1983); *Note*, Class Actions in Bankruptcy, 64 Texas L.Rev. 791, 799 n. 67 (1985).

It is uncontroverted that the bar date for filing claims was June 22, 1987. Groves' motion requesting, *inter alia*, relief in the form of setting a new bar date to accommodate those entities disclosed in the new accounting that would form part of the potential plaintiff class, irregardless of its success on said motion, was made on September 4, 1987. In motions requesting time enlargement, including Fed.R.Bankr. P. 3003(c), Fed.R.Bankr.P. 9006(b) directs that "the Court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

▮ Excusable neglect involves considering "1) whether granting the delay will prejudice the debtor, 2) the length of the delay and its impact on efficient court administration, 3) whether the delay was beyond the reasonable control of the person whose duty it was to perform, 4) whether the creditor acted in good faith, and 5) whether clients should be penalized for their counsel's mistake or neglect." *Fasson v. Magouirk (In re Magouirk)*, 693 F.2d 948, 951 (9th Cir.1982). Ordinary negligence is not sufficient and the lack of control over events is essential. *Lipshultz v. Griffis (In re Griffis)*, 31 B.R. 279, 282 (Bankr.Vt.1983). *See also Biscayne 21 Condominium Assoc., Inc. v. South Atlantic Financial Corp. (In re South Financial Corp.)*, 767 F.2d 814, 817 (11th Cir.1985). Excusable neglect is present when a party fails to meet an obligation due to "unique or extraordinary" circumstances. *Maryland Casualty Co. v. Conner*, 382 F.2d 13, 17 (10th Cir.1967). The party seeking the extension of time bears the burden of proving excusable neglect. *In re Benedict*, 65 B.R. 95, 96 (Bankr.N.D. N.Y.1986).

▮ The Court finds that on the existing record, Groves has not met its burden of demonstrating unique or extraordinary events beyond its control to justify resetting a new bar date for unknown and possibly nonexistent potential class plaintiffs to file proofs of claim. Groves has raised the lack of notice provided to these potential plaintiffs with respect to the bar date of June 22, 1987 as abrogating those entities' substantive rights. The Court recognizes due process as a constitutional component of its inquiry into excusable neglect. *See e.g. In re Waterman Steamship Corp.*, 59 B.R. 724, 726 (Bankr.S.D.N.Y.1986); *Hassett v. Weissman (In re O.P.M. Leasing Serv., Inc.)*, 48 B.R. 824, 830–831 (S.D.N.Y. 1985). It has been held that the failure to receive notice of the bar date, coupled with a timely filed informal proof of claim, constituted excusable neglect for the purposes of allowing the late filing of a formal claim pursuant to Fed.R.Bankr.P. 9006(b)(1). *In re Wm. B. Wilson Mfg.*, 59 B.R. 535, (Bankr.W.D.Tex.1986). However, due process cannot be accorded to potential class plaintiffs, whose existence is only supported by speculation. *Accord In re Standard Metals Corp.*, 48 B.R. 778, 787 (D.C.

Colo.1985), *aff'd.* 817 F.2d at 625 (10th Cir. 1987).

The "phantom" group Groves refers to can be distinguished from the unknown class of trust beneficiaries in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to whom the High Court required publication to satisfy the notice component of due process. There, the unknown and missing claimants were unidentified but existing beneficiaries of known small trust estates which had been pooled into a common fund for investment administration and whose whereabouts or interests could not, with due diligence, be ascertained. Here, the unknown claimants are those alleged and possibly nonexistent trust beneficiaries of two public improvement subcontracts both performed in one county, who supplied material and services for which they are as yet presumably unpaid. The case at bar also presents a different situation than that faced by the courts in *O.P.M. Leasing* or *Waterman,* where specific individuals requested leave to file late proofs of claim for themselves in Chapter 11 cases of large corporations with multi-state and multi-national contacts.

Groves is asking the Court to establish a new claims bar date for those unlisted claimants it hopes will materialize out of an accounting and then make trust funds claims to the Debtor's Chapter 11 assets now totaling, at best, $175,000.00. The very nature of the Debtor's small seasonal landscaping business in central New York State—that she had virtual personal contact with everyone who worked for her on the three subcontracts—belies Groves' request. In the absence of competent proof to the contrary, the Court cannot assume that all these purported plaintiffs, including those listed by Groves in its motion papers, did not have actual knowledge, if not formal notice, of her Chapter 11 case and/or the bar date for filing claims. *See e.g. McGlinn v. Sullivan Ford Sales, Inc. (In re Sullivan Ford Sales, Inc),* 25 B.R. 400, 402 (Bankr.D.Maine 1982) (creditor without actual knowledge of Chapter 11 case not barred from pursuing claim post confirmation).

Nor does the Court find any reason that the notice by mail, pursuant to Fed.R. Bankr.P. 2002(b), was not reasonably certain to inform those affected by the Debtor's bankruptcy or might have been inadequate or impracticable to have warranted notice by publication. Fed.R.Bankr.P. 2002(k). The 1983 Advisory Committee Note observes:

Notice by mail may be impracticable when, for example, the debtor has disappeared or his records have been destroyed and the names and addresses of his creditors are unavailable, or when the number of creditors with nominal claims is very large and the estate to be distributed may be insufficient to defray the costs of issuing the notices. Supplementing notice by mail is also indicated when the debtor's records are incomplete or inaccurate and it is reasonable to believe that publication may reach some of the creditors who would otherwise be missed.

"In bankruptcy, the court has an obligation not only to the potential claims, but also to existing claimants ... and must balance the needs of notification of potential claimants with the interest of existing creditors and claimants." *Vancouver Women's Health Soc. v. A.H. Robins Co.,* 820 F.2d 1359, 1364 (4th Cir.1987) (notification program found adequate and denial of claimants' committee motion for extension or abolishment of claims bar date upheld). The amount of notice necessary to comport with due process is case specific and turns on facts and circumstances. *In re Standard Metals Corp., supra,* 48 B.R. at 787 (publication requirement not appropriate where no evidence of existence of claim or claims and identity of said claims yet to be determined).

Furthermore, Debtor's Chapter 11 case, although more than fourteen months old, does not yet have a confirmed plan, and the Court only recently approved the amended disclosure statement. Thus, the finalities triggered by confirmation, such as discharge under Code § 1141 and its effect on a creditor without "notice" of the case, are, as yet, undetermined. Hence, Groves' con-

cerns, if colorable, are somewhat premature since a potential creditor's unlisted claim, at this juncture, is not now "forever barred." *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). *See also Reliable Elec. Co. v. Olson Const. Co.*, 726 F.2d 620 (10th Cir.1984); *Orcon, Inc. v. Nevada Emerg. Serv. (In re Nevada Emerg. Serv.)*, 39 B.R. 859, 861–863 (Bankr.D.Nev.1984); *In re Safeguard Co.*, 35 B.R. 44, 47 (Bankr.W.D.Pa.1983); *In re Sullivan Ford Sales, Inc., supra*, 25 B.R. at 400; *In re C.S.T. Const. Co.*, 21 B.R. 840, 844 (Bankr.N.D.Ill.1982) (late claim allowed due to creditor's lack of notice of disclosure hearing); B. Weintraub & A. Resnick, BANKRUPTCY LAW MANUAL ¶ 8.24 at 8–121 to 8–125 (1986 ed. & Supp. 1987).

Additionally, the information disclosed by the Debtor in her Petition and Schedules with respect to creditors was made under penalty of perjury. There is no evidence in the record to indicate the she was or is secreting information, or avoiding providing creditors with the required notices of proceedings. Furthermore, Groves examination of the Debtor and her books and records pursuant to Fed.R.Bankr.P. 2004 gave it more than ample an opportunity to "smoke out" any potential and unlisted creditors. The 120–day notice provision of § 137 of the New York State Finance Law would appear to have apprised Groves of its liability to any trust fund claims long before the bar date, notwithstanding the absence of final payment which triggers the one year statute of limitations for actions on a payment bond. In sum, Groves has provided the Court with no reason to believe that there exists any unknown and unpaid trust beneficiaries not previously listed or filed in the Debtor's Bankruptcy case at this point in time, nor how a further accounting will uncover new information.

In fact, it strains the Court's credulity to conceive of additional trust fund beneficiaries "out there" who have not yet stepped forward to protect their financial interests in the course of the Debtor's Chapter 11 case. " 'It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it.' " *Mullane v. Central Hanover Bank & Trust Co., supra*, 339 U.S. at 316, 70 S.Ct. at 658 (quoting Chief Justice Marshall in *The Mary*, 9 Cranch 126, 144, 3 L.Ed. 678 (1815)); *In re E & E L.P. Gas, Inc.*, 26 B.R. 952, 953–955 (Bankr.N.D.Ill.1983) (the burden of giving notice of case does not shift to the debtor until creditor asserts his interest).

The Court believes that the setting of a bar date for filing claims, and allowing modification or enlargement of the time only on a showing of excusable neglect, furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case. "To allow the debtor to be continually pursued by his creditors 'ad infinitum ... would be to sanction a form of slow torture' contrary to the spirit and purposes of the bankruptcy laws." *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264 (Bankr.D.Me.1984) (citation omitted).

Moreover, to commence a dischargeability complaint in a class action form, each complaint must be timely. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir.1976); *Healy v. Loeb Rhoades & Co.*, 99 F.R.D. 540, 543 (N.D.Ill.1983). The bar date to file a dischargeability complaint under Code § 523(a)(4) is governed by Code § 523(c) and Fed.R.Bankr.P. 4007(c). This Court set that date as May 23, 1987. Groves was the only entity to receive an extension, which expired as to itself on August 2, 1987, thirty days after it completed its examination of the Debtor pursuant to the Fed.R.Bankr.P. 2004 Order. Fed.R.Bankr.P. 4007(c) explicitly precludes time enlargement on a motion made after the time has expired. *See Byrd' v. Alton (In re Alton)*, 837 F.2d 457 (11th Cir.1988); *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987); *Jones v. Hill (In re Hill)*, 811 F.2d 484, 486–487 (9th Cir.1987); *Vaccariello v. Lagrotteria*, 43 B.R. 1007, 1013–1014 (D.C.Ill.1984); *In re Maher*, 51 B.R. 848, 851–852 (Bankr.N.D.Iowa 1985). A timely motion for enlargement can only be

granted "for cause" and a movant cannot rely on the more flexible standard of excusable neglect. *See In re Kirsch,* 65 B.R. 297 (Bankr.Ill.1986). Hence, Groves is the only member of the purported class who can file a dischargeability complaint based on Article 3–A in the Debtor's Chapter 11 case.

The failure to meet the two threshold requirements for commencing a class action adversary proceeding—timely filed individual proofs of claims and a non-time-barred action—renders moot any analysis of whether Groves' action satisfies the prerequisites of Fed.R.Civ.P. 23.[3] Accordingly, the Court denies Groves' motion to conditionally certify the class pending an accounting by the Debtor.

## II. DEBTOR'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM

The Debtor seeks to amend her answer and counterclaim, pursuant to Fed.R. Bankr.P. 7013 and 7015, in the interests of justice and judicial economy. She alleges that her dispute with Groves really involves three subcontracts which were in existence at the same time and encompassed the substantially similar work of DOT road construction and/or improve-

ment work. To that end, she basically seeks to include the third subcontract, D2500094, executed with Groves on May 31, 1983, as a new counterclaim in the amended answer. The Debtor asserts that it was previously omitted by co-counsel's oversight and increases the damages claim to almost $223,000.00. She urges that the liberal spirit of pleading under the Federal Rules sanctions such amendments when they, as here, contribute to a more expeditious adjudication of the controversy. The Debtor maintains that there will be no prejudice to Groves and, rather than commence a separate action for this third subcontract, it would be better to provide complete relief between the parties here in this adversary proceeding where discovery has not been completed and no trial date set.

In opposition, Groves responds that the Debtor's motion will spark additional motions for dismissal before this Court since the statute of limitations with respect to D2500094 has already run. Additionally, it asserts that the Debtor's claims under this third contract are an unrelated, traditional contract action which should be litigated outside the bankruptcy court, and at the hearing, argued that it was not submitting to the Court's jurisdiction as to D2500094. Groves further states that Debtor is estopped from asserting such claims, as they

---

**3.** The Court notes, in passing, that Groves has not met its burden of proof with respect to any of the four prerequisites of Fed.R.Civ.P. 23(a). Regarding numerosity, thirty non-duplicative claims are listed and filed in the Debtor's Petition and all are held by creditors located in central New York. Even if one were to include them all, including lawyers, landlord and accountants, in a most liberal construction of trust beneficiary under § 71 of Article 3–A, e.g. as "persons having claims for payment of amounts for which the trustee is authorized to use trust assets", the class would not be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). *See EWH v. Monarch Wine Co., Inc.,* 73 F.R.D. 131 (E.D.N.Y.1977) (thirty-four to fifty insufficient); *In re W.T. Grant Co.,* 24 B.R. 421 (Bankr.S.D.N.Y.1982) thirty-three insufficient). Commonality and typicality questions "tend to merge." *General Tel. Co. of Southwest v. Falcon, supra,* 457 U.S. at 157 & n. 13, [102 S.Ct. at 2370 & n. 13]. Clearly, the fact that Groves' dischargeability complaint is the only one not time-barred sharply distinguishes Groves from the other potential plaintiffs and places it in a different and more advantageous

position. The Court questions how Groves, who is claiming individually as a subrogee, can represent those alleged trust beneficiaries who are not in some way also subrogees, unless, once again, "beneficiary" is given a very expansive meaning to include those with claims from whatever source. (There is no doubt that apportioning the potential plaintiff class into subclasses is not feasible due to the numerosity obstacle.) Furthermore, Groves acquired its subrogee status by presumably paying the claims of some alleged trust beneficiaries, who then need none of the protections afforded by a class action since they have suffered no injury from nonpayment. (This might further reduce the class size.) Finally, the clear divergence between the interests and injuries of the alleged trust beneficiaries, from any source, and Groves, who individually is the focus of substantial counterclaims, leads the Court to conclude that Groves would not be able to fairly and adequately represent those alleged trust beneficiaries in a class action. *See generally* 9 L. King COLLIER ON BANKRUPTCY ¶ 7023 (15th ed. 1987).

involve the owner and that to the extent they do involve itself, the sub-contract provided for arbitration. Groves claims prejudice stemming from the Debtor's special counsel and the longer and more complex trial that will ensue with the inclusion of the third subcontract. It charges that Debtor's motion was not made in good faith and will only result in additional pre-trial motions and further delay.

It is established policy to expedite bankruptcy proceedings, 9 COLLIER ON BANKRUPTCY, *supra*, ¶ 7015.02 at 7015–1, for the efficient administration of the bankruptcy estate furthers speedy debtor relief and maximizes creditor distribution. Thus, a party may amend his pleading by leave of court which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a) (incorporated by Fed.R.Bankr.P. 7015). Additionally, "[a] trustee or debtor in possession who fails to plead a counter-claim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action." Fed.R. Bankr.P. 7013 (additional provision not in Fed.R.Civ.P. 13, which is adopted in full). Amendments under both Fed.R.Civ.P. 13 and 15 lie within the court's discretion. *See Index Fund, Inc. v. Hagopian*, 91 F.R. D. 599 (S.D.N.Y.1981).

■ Fed.R.Civ.P. 15 "re-emphasizes and assists in attaining the objective of the rules on pleadings: that pleadings are not an end in themselves, but are only a means to the proper presentation of a case; that at all times they are to assist, not deter, the disposition of litigation on the merits." 3 MOORE'S FEDERAL PRACTICE, *supra*, ¶ 15.02[1] at 15–11. In exercising their discretion, courts have denied amendments under subsection (a) when it would result in undue prejudice to the non-movant, is unduly delayed, is offered in bad faith or for a dilatory purpose, or where the moving party has had sufficient opportunity to state the claim and has failed. *Id.* at ¶ 15.08[4] at 16–69 to 15–75. Moreover, "[i]f the underlying facts or circumstances relied upon by a plaintiff [movant] may be

a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230. *See also S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979). Delay alone is not sufficient to bar the amendment absent prejudice to the other party. *Chrysler Corp. v. Fedders Corp.,* 540 F.Supp. 706, 716 (S.D.N.Y.1982). There must also be a proper reason to deny leave to amend. *See e.g. Hanlin v. Mitchelson,* 794 F.2d 834, 840–842 (2d Cir.1986) (denial of leave to amend reversed for abuse of discretion since non-movant put on notice of possible contract and negligence claims by earlier pleadings); *Goss v. Revlon, Inc.,* 548 F.2d 405, 407 (2d Cir.1976) (ignorance of the law insufficient basis for leave to amend) (citations omitted); *CBS, Inc. v. Ahern,* 108 F.R.D. 14, 17–18 (S.D.N.Y. 1985).

Fed.R.Bankr.P. 7013 and Fed.R.Civ.P. 13(f) govern omitted counterclaims and, disjunctively worded, set out four alternative grounds to grant a pleading amendment. "Courts should be liberal in allowing amendments of permissive counterclaims where no prejudice would result, where the pleader has not been guilty of inexcusable neglect or has not by reprehensible conduct deprived himself of any claim to special consideration by the court." MOORE'S FEDERAL PRACTICE, *supra*, ¶ 13.33 at 13–196. *See e.g. Ralli v. Tavern On The Green,* 566 F.Supp. 329 (S.D.N.Y.1983) (motion denied where factually remote from main claim which was ready for trial and ensuing delay would prejudice non-movant); *Larson v. Arnold E. Verdi Trucking, Inc.,* 28 F.R.D. 377 (E.D.Pa.1961) (motion denied where non-movant would be prejudiced, movants were guilty of laches in not offering counterclaim until nearly two years after original answer, failure to file counterclaim not due to counsel's inadvertence and counterclaim lacked merits).

■ The Court finds that the proposed amended answer and its omitted counter-claims are not frivolous on their face. *See Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230. The Court finds that but for

the first counterclaim, the entire amended answer is substantially the same as the original answer, albeit more specific and refined. Thus, since all but the first counterclaim clearly "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading, ... [it] relates back to the date of the original pleading", which was timely made. Fed.R.Civ.P. 7015(c).

The counterclaim at issue contains a third subcontract, associated with Groves' DOT contract D2500094, and alleges an unpaid balance, of some $150,300.00, which is then factored into the damages arising out of the other two subcontracts to result in a new overall claim exceeding $222,-000.00, an increase of almost $72,000.00 from the original answer. The Court is not persuaded by Groves' assertion that a cause of action based on this contract is time-barred. While final payment may have been received by Groves from the state on August 25, 1986, the statute of limitations with regard to a contract executed in May of 1983 under Article 3–A, runs one year from the completion of such improvement. Article 3–A, § 77(2). Even assuming the date of completion of such improvement was identical to the date of final payment, the one year would have expired August 25, 1987. Since the Debtor filed her petition on January 14, 1987, her counsel is correct in asserting that Code § 108(a) acts to extend the statute of limitations with respect to D2500094 for two years after the order of relief, or until January 14, 1989.

The Court finds that no undue prejudice would befall Groves if this counterclaim were allowed since it was the subject, along with the other two subcontracts, of Groves' examination of the Debtor under Fed.R.Bankr.P. 2004. *See* Order for Examination Under Rule 2004 And For Extension Of Time To File Complaint Under Section 523(c), para. 1 (May 14, 1987) (explicitly directing Debtor to turn over all books and records relating to D2500094, D250416 and D250417). For Groves to have had no in-kling of the possible role of this third subcontract in Debtor's defense in the adversary proceeding is simply not credible. Justice requires that the Debtor be given the opportunity to defend the action with the same information Groves utilized in discovery. *Accord Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230. Moreover, D2500094 is not factually remote from the other two contracts since all three subcontracts were executed and performed contemporaneously and both parties accuse each other of commingling different contract proceeds and disbursements. In fact, D2500094 may turn out to loosely arise out of the same transaction or occurrence as the other two and constitute a compulsory counterclaim. *See* Fed.R.Civ.P. 13(c) and 15(c).

The Court also finds that Groves is estopped from asserting this Court's lack of jurisdiction over the third contract. This is by virtue of it having chosen this forum, as opposed to arbitration, to resolve the dispute around the other two similar subcontracts and explicitly consented to its core jurisdiction in its complaint. Groves cannot now complain of the progression of the litigation it began. Furthermore, "counterclaims filed by the estate against persons filing claims against the estate are core proceedings." 28 U.S.C.A. § 157(b)(2)(C) (West 1979 & Supp.1987).

The amendment is not unduly delayed, for the motion was filed October 20, 1987, some three and one-half months from the date of commencement of Groves' action, and some sixty days from the filing date of the original answer. *See e.g. Rogers v. Valentine,* 426 F.2d 1361 (2d Cir.1970) (Rule 15(a) amendment denied where movant attempted to assert new cause of action at pre-trial conference four years after action commenced and then one year later one month before trial). Neither does the motion for leave to amend appear to have been made in bad faith or for a dilatory purpose.[4]

---

**4.** The Court acknowledges the potentiality for duplication and abuse in the Debtor's retention of general and special counsel. However, both attorneys were appointed by the Court in specifically different capacities, Code § 327(e), and there appears, at this point in time, to be no legal or ethical violations. *See e.g. In re Iorizzo,* 35 B.R. 465 (Bankr.E.D.N.Y.1983).

The Debtor appeared to have had sufficient opportunity to state the counterclaim and failed since it was not a question of law developing at the time nor that the grounds for the counterclaim revealed themselves after the original answer was made. Additionally, the appointment of special counsel was made more than two months prior to the filing of the original answer. However, the bankruptcy rule addition to the federal rule, which relates to all counterclaims, provides that oversight or inadvertence, which Debtor's co-counsel admitted to at the hearing, does justify amendment. There is no showing of excusable neglect since counsel appeared in control of the pleadings and no "unique or extraordinary circumstances" were demonstrated. *See Maryland Casualty Co. v. Conner, supra,* 382 F.2d at 17; *In re Griffis, supra,* 31 B.R. at 282.

As indicated, the Court does find justice to require that Debtor's motion be granted in full, especially as it encompasses a subcontract that the parties have included in their discovery and, hence, could also be loosely perceived as an amendment to conform to the evidence under Fed.R.Civ.P. 15(b). The Debtor's ability to file a separate adversary proceeding on the third contract and the resultant inefficiency, delay and expense in the entire Chapter 11 for both parties in two separate actions outweigh any actual delay and complexity its addition in the instant action might generate. *Accord S.S. Silberblatt, Inc. v. East Harlem Pilot Block, supra,* 608 F.2d at 42–43. Moreover, this action can accommodate a third contract without great difficulty since no trial date has been set and discovery has not been completed.

Accordingly, the Court grants the Debtor leave to file an amended answer and counterclaim.

## III. DEBTOR'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Bankr.P. 7056, incorporating Fed.R.Civ.P. 56, the Debtor requests, at minimum, a narrowing for trial of those issues of fact in good faith controversy and those not in substantial controversy, presumably under Fed.R.Civ.P. 56(d). In support, the Debtor offers a record of the complaint, her answer, the Court's Code § 341(a) and Fed.R.Bankr.P. 4007(c) Notice dated March 3, 1987, the Court's Fed.R.Bankr.P. 2004 Order dated May 14, 1987, the Debtor's two affidavits dated September 11 and October 14, 1987 and a memorandum of law, dated October 14, 1987. Fed.R.Civ.P. 56(c).

The Debtor's motion essentially contains five requests. The Court need not deal with two of these requests because the request to dismiss the class action was granted by virtue of the Court's denial of Groves' motion in this Memorandum–Decision, *see supra,* at I, and the request to dismiss those claims brought against the non-debtor defendants was similarly disposed of in this Court's Memorandum–Decision dated March 3, 1988.

Of the remaining three requests in the Debtor's summary judgment motion, first, the Debtor, relying on equity and the purpose behind the nondischargeability section, urges the dismissal of Groves' individual claims under Code § 523(a)(4) since Groves acquired its trust claim through subrogation and was not a beneficiary under § 71 of Article 3–A. Hence, because Groves was not an actual beneficiary of a pre-petition express trust, the Debtor maintains that it could not sue under Code § 523(a)(4). Second, the Debtor asks for the limitation of Groves' claim to $9,097.24, since that was the amount it actually paid to the Onondaga County Laborers' Health, Welfare, Pension and Annuity Funds Local Union No. 333 and Teamsters Welfare Fund Local Union No. 317 ("Funds") and thus, the extent of its claim through subrogation in this action, both defensively or offensively. Third, the Debtor requests the dismissal of any Lien Law trust claim brought by Groves on its own behalf or for any other party. She admits owing Groves $9,097.24 and asserts that her petition listed all her debts in connection with the three subcontracts. The Debtor also noted that since no entity is able to pursue a claim under Code § 523 against her or a claim against any of the other defendants, the entire action was moot and academic.

Alternatively, the Debtor points to her $222,000.00 counterclaim, based on breach of contract and Lien Law trust violation and Groves' own additional liability in contribution and indemnity under the latter theory. The Debtor avers that Groves cannot pursue any Lien Law trust claim, whether through subrogation or under trust or class action principles, since the equitable doctrines of subrogation and trust enforcement are not available to a plaintiff with "unclean hands", such as Groves. In addition, she claims that Groves' position is adverse and in conflict with every other alleged class co-plaintiff.

In opposition, Groves submits two memoranda of law and an affidavit by its area engineer, Keith Waters ("Waters"), who was project manager on D250416 and D250417. Waters attests to the statute of limitations barring the Debtor's claims under D2500094. He further states that she abandoned D250416 and D250417 and is mistaken in claiming that she was not paid for work completed and accepted by DOT. He asserts that DOT never agreed with the quantities Debtor claimed under these two subcontracts and recounts a measurement conducted by the Office of Minority Business at her request supporting DOT's position. Waters also states that Groves has clean hands in the action and points to Groves' letters to the Debtor, which she did not respond to, advising her of the procedures she was required to follow to pursue her work quantities dispute with DOT. Waters further attested to Groves advancing monies to the Debtor that exceeded the work on D250417.

Groves asks that the Court deny each of the Debtor's remaining three requests. It defends its individual claim under Code § 523(a)(4) by noting that courts have determined the nondischargeability of a claim under that subsection by looking solely at the acts of the debtor in creating the debt. It maintains that a subrogee is as much a trust beneficiary of the Lien Law as those who directly supply materials and labor since the monies Groves paid to the Debtor did not reach the trust beneficiaries whom Groves was then obligated to pay under its payment bond. Groves also points to the Debtor's "disregard" of the Lien Law record keeping requirements and her refusal to certify to DOT that she paid all the laborers as proof that the equities lie in its favor.

Second, Groves states that it seeks, through subrogation, the nondischargeable recovery of $107,890.00 for monies it paid on the Debtor's behalf to the Funds and the costs of completing Debtor's work on the two subcontracts. Groves maintains that case law supports its recovery of completion costs involving money advanced to the Debtor for work she did not do and claims the subrogated rights of the completion subcontractor it paid and its trust claim for work completed with its own employees. Third, Groves urges that the Court dismiss the Debtor's request for dismissal of any Lien Law trust claims brought by Groves in an individual or representative capacity since Debtor, and not itself, has unclean hands. In support thereof, Groves again points to its own actions in advising the Debtor of preserving her claims and her own inaction, as well as Debtor's failure to maintain the statutorily required books, account for her trusts, pay certain trust beneficiaries, certify to DOT that she paid each subcontract's laborers and its own lack of liability under the Lien Law.

Fed.R.Civ.P. 56 is designed to pierce the allegations of the pleadings and facilitate the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). It is a powerful tool since it allows the court, after scrutinizing all the evidence in the record that would be admissible at trial, *see Keiser v. Coliseum Prop., Inc.*, 614 F.2d 406, 410–411 (5th Cir. 1980); *Ratner v. Young*, 465 F.Supp. 386, 389 (D.V.I.1979); *Equal Emp. Opportunity Com'n v. Keco Ind., Inc.*, 617 F.2d 443, 445–446 (6th Cir.1980), to isolate and dispose of factually insufficient claims and defenses before they become involved in a needless trial. *Donahue v. Windsor Locks Bd. of Fire Comm'r.*, 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert.*

*denied* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The burden is on the moving party to establish the absence of a genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Auletta v. Tully,* 576 F.Supp. 191, 195 (N.D.N.Y.1983), *aff'd.,* 732 F.2d 141 (1984); 6 MOORE'S FEDERAL PRACTICE, *supra,* at ¶ 56.15[3]. The substantive law governing the legal elements of the claim or defense determine materiality by identifying those facts critical and irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities and reasonable inferences must be viewed in the light most favorable to the opposing party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); 6 MOORE'S FEDERAL PRACTICE, *supra,* ¶ 56.23.

In considering whether to grant a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried" and must avoid trial by affidavit. *Donahue v. Windsor Locks Bd. of Fire Comm'r., supra,* 834 F.2d at 58 (quoting *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1319–1320 (2d Cir.1975)). Furthermore, summary judgment is inappropriate where the non-movant has produced sufficient facts to support the elements of his claim, *Celotex Corp. v. Catrett, supra,* 106 S.Ct. at 2554, where the dispute about a material fact is genuine such that reasonable minds could find for the non-moving party, *Anderson v. Liberty Lobby, Inc., supra,* 106 S.Ct. at 2510, or where the papers before the court disclose a real issue of credibility. *See Colby v. Klune,* 178 F.2d 872, 874 (2d Cir.1949); 6 MOORE's FEDERAL PRACTICE, *supra,* at ¶ 56.15[4].

While not explicitly addressed by Fed.R. Civ.P. 56, the great weight of authority advocates granting summary judgment to the non-moving party who has not formally made a cross-motion since "the form of the pleadings should not place a limitation upon the power of the court to do justice."

*Id.* at ¶ 56.12 at 56–331 (quoting its own first edition), 56–332 n. 6 (cases cited). *Cf.* Fed.R.Civ.P. 54(c) ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."). A court can grant such relief after determining upon careful inquiry that the party against whom summary judgment is rendered against has had a full and fair opportunity to ventilate the issues involved and failed to establish the existence of genuine triable material facts and that the party for whom summary judgment is rendered is entitled to it as a matter of law. *See National Expositions, Inc. v. Crowley Maritime Corp.,* 824 F.2d 131, 133–134 (1st Cir.1987); *Pueblo of Santa Ana v. Mountain States Tel. & Tel. Co.,* 734 F.2d 1402, 1408 (10th Cir.1984) *rev'd on other grounds,* 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985); *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 53 (D.C.Cir.1984); *Viger v. Commercial Ins. Co. of Newark, New Jersey,* 707 F.2d 769, 774 (3d Cir.1983); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982); *Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157, 165–166 (2d Cir.1971); *Local 33, Int'l Hod Carriers etc. v. Mason Tenders, etc.,* 291 F.2d 496, 505 (2d Cir.1961). *Cf. Fountain v. Filson,* 336 U.S. 681, 683, 69 S.Ct. 754, 755, 93 L.Ed. 971 (1949) (while not passing on the propriety of granting summary judgment to non-moving party, held it error to grant such judgment if "victim" had not had the opportunity to dispute facts material to that issue.).

The Court finds Debtor's rationale behind her request to dismiss Groves' individual subrogated claims under Code § 523(a)(4) to fly in the face of the purpose of the statute and the Code and relevant case law. It is clear that Code § 523(a)(4), and its almost identical statutory predecessor in the Bankruptcy Act of 1898, § 17(a)(4), was enacted to prevent the discharge in bankruptcy of a liability that would not exist but for the wrongful conduct of the debtor. *Hartford Accident &*

*Indemnity Co. v. Flanagan,* 28 F.Supp. 415, 419 (S.D.Ohio 1939); *Ragsdale v. Haller,* 780 F.2d 794, 797 (9th Cir.1986); *United States Life Title Ins. Co. of New York v. Wade (In re Wade),* 26 B.R. 477, 483–484 (Bankr.N.D.Ill.1983). Code § 523's different treatment of those categories of debt involving liability incurred through the fault of the debtor in subsections (a)(2), (4), and (6), *see e.g.* Code § 523(a)(3)(B), (c); Fed.R.Bankr.P. 4007(c), implements this public policy which focuses on the debtor's wrongful acts, irregardless of the situation of the claim holder. However, to reconcile the fresh start policy of bankruptcy law, Code § 523(a)(4) "is not applicable to every breach of duty, but only those involving serious misconduct that come under the headings of 'fraud ... and defalcation'." *In re Grosso, supra,* 9 B.R. at 821 (quoting *In re Harris I. Koritz,* 2 B.R. 408, 417 (Bankr.D.Mass.1979)).

 Dischargeability is determined by the substance of the liability, not the form, and inquiry must be made into the true and essential nature of the debt. *Pepper v. Litton,* 308 U.S. 295, 305–306, 60 S.Ct. 238, 244–245, 84 L.Ed. 281 (1939); *Brown v. Felsen,* 442 U.S. 127, 139, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979); *Pauley v. Spong (In re Spong),* 661 F.2d 6, 9 (2d Cir.1981). A debt that originates from the debtor's fraud should not be discharged simply because the debtor has entered into a settlement or indemnification agreement, and the debt now arises from a contract rather than a tort. *See Greenberg v. Schools,* 21 B.R. 1011 (S.D.Fla.1982), *aff'd.* 711 F.2d 152 (11th Cir.1983); *Fireman's Fund Ins. Co. v. Covino (In re Covino),* 12 B.R. 876 (Bankr.M.D.Fla.1981).

Moreover, the use of the term "subrogation" in Code §§ 502(e)(1)(C) and 507(d), albeit in the priority context, and the appearance of the term "assignation", a closely linked concept, in Code § 523(a)(5)(A) gives rise to a presumption of statutory construction that the absence of subrogation in the Code § 523(a) categories was deliberate. Code § 509, and particularly subsection (a), support the inclusion of subrogated claims in Code

§ 523(a)(4). *See In re Missionary Baptist Found. of Am., Inc.,* 667 F.2d 1244, 1246 (5th Cir.1982). A respected commentator, in discussing Code § 523(a)(4), notes that "[s]ection 507(d) controls." 3 COLLIER ON BANKRUPTCY, *supra,* ¶ 523.14 at 523.97. Code § 507(d) provides that "an entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5) or (a)(6) of this section is subrogated to the right of the holder of such claim to priority under such subsection." The Court observes that Code § 507(d), in carving out four exceptions, assumes the existence of subrogated claims within the Code.

Courts have accorded subrogees standing to assert the subrogor's right to have a debt declared nondischargeable under Code § 523(a)(2), (4) and (6). *See Browning v. Browning (In re Browning),* 31 B.R. 995 (S.D.Oh.1983) (Code § 523(a)(2)); *Minority Equity Capital Corp. v. Weinstein (In re Weinstein),* 31 B.R. 804, 811, n. 4 (Bankr.E.D.N.Y.1983) (Code § 523(a)(2)); *In re Wade, supra,* 26 B.R. at 477 (Code § 523(a)(2) & (4)); *Western Surety Co. v. Meek (In re Meek),* 25 B.R. 58 (Bankr.D.Or.1982) (Code § 523(a)(4)); *In re Covino, supra,* 12 B.R. at 876 (Code § 523(a)(4)); *Baxter v. Flick (In re Flick),* 75 B.R. 204 (Bankr.S.D.Cal.1987) (Code § 523(a)(4)); *State Bar of Calif. v. Tooks (In re Tooks),* 76 B.R. 162 (Bankr.S.D.Cal.1987) (Code § 523(a)(4) & (6)); *Fireman's Fund Ins. Co. v. Dynda (In re Dynda),* 19 B.R. 817 (Bankr.M.D.Fla.1982) (Code § 523(a)(6)). *But see United States Life Title Ins. Co. of Dallas v. Kisich (In re Kisich),* 28 B.R. 401 (Bankr. 9th Cir.1983) (Code § 523(a)(1)); *Ridge v. Smothers (In re Smothers),* 60 B.R. 733 (Bankr.W.D.Ky.1986) (Code § 523(a)(1)); *Dubose v. Kaczmarski (In re Dubose),* 22 B.R. 780 (Bankr.N.D.Oh.1982) (Code § 523(a)(1)).

 A common thread underlying the decisions recognizing subrogee standing in dischargeability actions is that since subrogation, whether conventional or legal, is basically an equitable remedy, it will not be enforced in favor of a wrongdoer. 23 N.Y.JUR.2d Subrogation § 35 (1982). The

record before the Court demonstrates genuine issues of material fact with respect to wrongful behavior on the part of both the Debtor and Groves. Consequently, while the Court concludes that Code § 523(a)(4) does not preclude Groves' assertion of a nondischargeable claim through subrogation, a trial is necessary to flesh out the exact nature and chronology of the events prior to and subsequent to the termination of the three subcontracts.

If Groves can prevail in a showing of "clean hands", it will, through subrogation, be able to establish the pre-breach existence of a fiduciary relationship between the Debtor as trustee and itself as a beneficiary under Article 3–A, as required by Code § 523(a)(4). This conclusion also furthers the purpose of the Lien Law, even though Groves may not be an "actual" beneficiary under § 71 of Article 3–A. *See Aquilino v. United States*, 10 N.Y.2d 271, 278–279, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961); *Teman Bros, Inc. v. New York Plumbers' Specialties Co., Inc.*, 109 Misc.2d 197, 444 N.Y.S.2d 337 (Sup.Ct. 1981).

Code § 523(a)(4) has been consistently construed as adopting a narrow definition of fiduciary and thus, applies only to express trusts, *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Ragsdale v. Haller, supra*, 780 F.2d at 796; *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 488–489 (S.D.N.Y.1987); 3 COLLIER ON BANKRUPTCY, *supra*, ¶ 523–14 at 523–93 to 523–97. This Court has previously joined with other bankruptcy courts in recognizing that Article 3–A of the New York Lien Law establishes an express statutory trust for the purposes of dischargeability. *See Dawley v. Gould (In re Gould)*, 65 B.R. 87 (Bankr.N.D.N.Y.1986) (and cases cited therein); *In re Grosso, supra*, 9 B.R. at 820–821. Hence, "the core requirements ... that the relationship exhibit characteristics of the traditional trust relationship and that the fiduciary duties be created before the account of wrongdoing and not as a result of the act of wrongdoing" are satisfied. *Teichman v. Teichman (In re Teichman)*, 774 F.2d 1395, 1399 (9th Cir.

1985) (citations omitted). *See also Davis v. Aetna Acceptance Co., supra*, 293 U.S. at 333, 55 S.Ct. at 153.

However, Code § 523(a)(4) also requires the creditor to prove that the debt arose through "fraud or defalcation while acting in a fiduciary capacity." Thus, Groves must prove that the debt was created through Debtor's fraud or defalcation in breach of the fiduciary duty owed Groves, as subrogee of the trust fund beneficiaries.

> "Proof of defalcation does not require evidence of any intentional wrong by the debtor. Whereas fraud under the Bankruptcy Code 'refers to positive fraud, involving moral turpitude,' ... defalcation is broadly defined to include 'failure of a fiduciary to account for money he received in his fiduciary capacity' regardless of the fact that such failure may have resulted from ignorance or negligence."

*In re Gans, supra*, 75 B.R. at 490 (quoting *In re Wolfington*, 47 B.R. 762, 764 (Bankr. E.D.Pa.1985). *See also Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937) (J. Learned Hand); *Orem Postal Credit Union v. Twitchell (In re Twitchell)*, 72 B.R. 431, 434–436 (Bankr.D. Utah 1987); *Gonzales v. Raiser Construction Co. (In re Gonzales)*, 22 B.R. 58, 59 (Bankr. 9th Cir.1982).

Furthermore, the standard of proof as to defalcation is preponderance of the evidence while fraud requires the plaintiff to prove each element by clear and convincing evidence. *See In re Gans, supra*, 75 B.R. at 484; *Trell v. Dunlevy (In re Dunlevy)*, 75 B.R. 914, 917 (Bankr.S.D. Ohio 1987). While the "badness" of fraud is much more obvious than an act of defalcation, which is evaluated by an objective standard wherein bad faith is irrelevant, both kinds of wrongful behavior invoke the Code § 523(a)(4) exception to dischargeability. *See Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 256 (6th Cir.1982); *In re Twitchell, supra*, 72 B.R. at 436.

The record before the Court discloses the Debtor's acknowledgment of the

subrogated claim status of the $9,097.24 Groves paid into the Fund on her behalf. Her admitted failure to make these Fund payments, whether through ignorance or negligence, constitutes defalcation within the meaning of Code § 523(a)(4), rendering the sum a nondischargeable debt. Therefore, the Court need not make an inquiry into the fraud category of Code § 523(a)(4) with respect to these monies.

This brings the Court to the Debtor's second request regarding the limitation of Groves' claim to the monies it paid into the Funds. Groves alleges that it additionally expended some $98,793.00 to complete the Debtor's work in D250416 and D250417 after her termination by using its own forces and those of a different subcontractor. The Debtor counters that if Groves is found liable on its counterclaim for breach of contract, *see supra*, at II, then Groves' claim for completion costs under Code § 523 or Article 3-A would be meritless since it would not be reimbursed for the consequences of its own wrongdoing. This is a point well taken and again illuminates the factual issues in dispute as to the actual events surrounding the Debtor's termination of D250416 and D250417, notwithstanding the fact that, as a matter of law, completion costs paid out to cover work never performed are recoverable under Article 3-A through subrogation principles. *See Saint Paul Fire & Marine Ins. Co. v. New York*, 99 Misc.2d 140, 146, 415 N.Y.S. 2d 949 (Ct.Cl.1979); *National Surety v. Fishkill Nat'l Bank*, 61 Misc.2d 579, 581, 306 N.Y.S.2d 122 (Sup.Ct.1969); *Metropolitan Sand Corp. v. Lipson*, 4 Misc.2d 216, 158 N.Y.S.2d 360 (Sup.Ct.1956).

Moreover, these completion costs may be nondischargeable under Code § 523(a)(4) if Groves can prove that the Debtor received monies to complete certain improvements under the subcontracts and did not apply said trust funds for those purposes. *See In re Thomas*, 729 F.2d 502 (7th Cir.1984), *vacating and remanding* 34 B.R. 103 (E.D.Wisc.1983). While the Debtor may have failed to keep the statutorily required books and records, *see* Deposition of Margaret C. Peters at pp. 17, 107 (June 26, 1987); Article 3-A at §§ 75(4), 79-a(3), the

resulting "presumption of diversion" is only a permissible inference. *See In re Grosso, supra*, 9 B.R. at 826. The Court finds this inference weakened under the disputed facts, necessitating a trial whereby Groves can meet its burden of proof on the remaining sums it seeks to be determined nondischargeable.

Groves, however, has not specifically set out the breakdown of the monies it expended to complete the Debtor's unfinished work under the subcontracts and both parties sharply disagree as to the amounts Groves did pay Debtor under D2500094, D250416 and D250417. Furthermore, it is unclear when completion occurred as to all three subcontracts to trigger the applicable statute of limitations under the Lien Law and the Code or whether the Debtor abandoned D250416 and D250417 invoking a different statute of limitation. *See In re Grosso, supra*, 9 B.R. at 822–823. The clarification of these factual issues is critical to the resolution of the Debtor's remaining three requests in her summary judgment motion, as well as on her counterclaim. Hence, the Debtor's motion for summary judgment as to these three requests is denied and Groves is granted summary judgment on the $9,097.24 it paid into the Funds on behalf of the Debtor.

By reason of the foregoing, it is hereby ORDERED:

1. Groves' motion to conditionally maintain its adversary proceeding as a class action, pending an accounting by the Debtor, is denied pursuant to Fed.R.Bankr.P. 7023.

2. The Debtor's motion for leave to file an amended answer and counterclaim is granted and the Debtor is directed to file said pleadings, pursuant to Fed.R.Bankr.P. 7013 and 7015.

3. The Debtor's motion for summary judgment is granted on the dismissal of the class action or representative form of the adversary proceeding and as to the nondebtor defendants, by virtue of the Court's ruling on Groves' motion and the Court's Memorandum–Decision on March 3, 1988, respectively. The remainder of her motion

—a) the dismissal of Groves' individual claims under Code § 523(a)(4), b) the limitation of Groves' claim to $9,097.24 and c) the dismissal of Groves' individual Article 3–A trust claims—are denied.

4. Groves is granted summary judgment as to the sum of $9,097.24 being a recoverable and nondischargeable debt pursuant to Article 3–A and Code § 523(a)(4).