Wayne HEALY, Plaintiff,

v.

LOEB RHOADES & CO. and Loeb Rhoades & Co., Inc., Defendants.

No. 82 C 5991.

United States District Court, N.D. Illinois, E.D.

June 20, 1983.

Edward T. Joyce, Steven J. Rotunno, Joyce & Kubasiak, P.C., Chicago, Ill., Lewis S. Sandler, New York City, for plaintiff.

Howard R. Koven, Steven L. Bashwiner, H. Nicholas Berberian, Howard D. Lieberman, Julie P. Shelton, Friedman & Koven, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This securities action is before the court on plaintiff Healy's motion for class certification. The court grants Healy's motion with some modifications and conditions. As the court informed the parties at the June 3 status hearing, this opinion is a brief outline of the court's decision, rather than a complete record of all the court's reasoning. Familiarity with the court's prior class action opinion in Nos. 78 C 947 and 81 C 3699 is assumed.

### RULE 23(a)

■ The court finds that the four requirements of Rule 23(a), Fed.R.Civ.P. are met. These requirements are the numerosity of the class, the existence of common questions of law or fact, the typicality of the representative's claim, and his adequacy as a representative.

*Numerosity*

Healy has made a sufficient showing that the class he seeks to represent is so numerous that joinder of each member is impracticable. (Healy memo filed 12/20/81, pp. 8–10.)

*Existence of Common Questions*

There can be no serious dispute as to the existence of questions of law and fact common to the class. The class will proceed on a fraud-on-the-market theory, alleging that class members purchased Olympia stock (or Lone Star stock in anticipation of a merger with Olympia) in reliance on Olympia's market price, but that that market price had been inflated artificially by defendants (hereafter "Loeb Rhoades").

*Typicality*

Loeb Rhoades challenges the typicality of Healy's claim on several bases. Loeb Rhoades asserts that Healy is subject to an atypical defense that he made a profit trading in Olympia during the period in question. As discussed below, the court will allow the class to present claims with respect to purchases of Lone Star made in anticipation of the Olympia merger. Healy's Lone Star purchases therefore should be considered, defeating the argument that he profited during the period in question. (Healy memo filed 4/7/83, pp. 29–30.)

Loeb Rhoades also suggests possible defenses to Healy's claim that he relied on the integrity of the market in making his purchases. These possible defenses probably are not significantly atypical. Any class representative in a fraud-on-the-market case would be subject to some kind of challenge that he did not rely on the integrity of the market. The court doubts that Loeb Rhoades' proposed challenges to Healy's reliance will distract him from his duties to the class. *See J.H. Cohn & Co. v. American Appraisal Associates, Inc.,* 628 F.2d 994, 998–99 (7th Cir.1980).

*Adequacy of Representation*

With great zeal Loeb Rhoades attacks Healy's adequacy as a class representative. Loeb Rhoades attacks Healy's credibility, but the court finds these attacks insufficient to disqualify Healy. Some of Loeb Rhoades' arguments exaggerate problems in Healy's testimony. For instance, Loeb Rhoades points to a passage in which Healy

could not remember why he purchased Lone Star (Healy dep., pp. 70–73), and a later passage in which he appears to remember his reasons after prompting from counsel (Healy dep., pp. 117–122). Before both these passages, however, Healy volunteered the statement that he purchased Lone Star to acquire Olympia stock (Healy dep., p. 41). All these passages demonstrate some confusion, including confusion as to chronology, but it cannot be said fairly that Healy could not recall his reasons for purchasing Lone Star. Loeb Rhoades' other arguments, while not baseless, are insufficient to warrant denial of class certification.

Loeb Rhoades argues also that Healy's lawsuit was brought solely to sustain the class action which Frank McNichols attempted to bring. In some sense this appears to be true, and the court recognizes that this factor can be considered on a motion for certification. Given all the circumstances of this case, however, the court does not believe that McNichols' involvement in Healy's decision to bring suit is a sufficient reason not to certify the class.

On the other hand, Healy cannot be represented by the same counsel as McNichols, who may be liable in indemnity or contribution for any judgment in favor of the class. Certification therefore is conditioned on Mr. Joyce's withdrawal as McNichols' attorney.

### RULE 23(b)

■ Healy seeks certification under Rule 23(b)(3), Fed.R.Civ.P. This provision is satisfied if the court finds that common questions of fact or law predominate over individual questions, and if the court finds also that a class action is a superior method of adjudicating this controversy fairly and efficiently. Factors relevant to the latter determination include the class members' interest in pursuing individual litigation, the extent of litigation already pending, the desirability of concentrating litigation in a single forum, and the ease or difficulty of managing a class action.

■ Loeb Rhoades argues, as it did in opposing McNichols' motion for certification, that individual questions predominate, because fraudulent oral communications are alleged. The court believes that Loeb Rhoades' argument is misplaced, since this is a fraud-on-the-market case. When direct reliance on fraudulent statements is alleged, then it is clear that written communications more appropriately form the basis for a class action. An entire class may have read the same prospectus, but it is unlikely that an entire class heard exactly the same oral communication. So, while the fraudulent nature of a written communication can be a question common to the entire class, the fraudulent nature of any oral communication is a question pertinent only to the claim of a plaintiff who heard that particular oral communication. In a fraud-on-the-market case, on the other hand, the plaintiff class does not allege direct reliance on fraudulent communications; instead, it alleges reliance on a market price which was inflated by fraudulent communications. It seems immaterial whether the fraudulent information was injected into the market by means of oral communication or by means of written communication. The same communications, whether oral or written, underlie the claims of all class members, and must be proved in an individual action as well as in a class action.

With one exception, Loeb Rhoades' cases on oral communications are not fraud-on-the-market cases. The exception, *Spelman v. F & M Bank and Trust Co.,* [1981–1982] Fed.Sec.L.Rep. (CCH) ¶ 98,426 (N.D.Okla. 1981) (abstract), is not inconsistent with the court's view of the law. In *Spelman* plaintiffs attempted to proceed on a fraud-on-the-market theory, but the court denied certification on the basis that several of the named plaintiffs had relied *directly* on oral or written communications. The court was not concerned with the question whether the alleged fraud on the market was accomplished orally or in writing.

Proving the alleged fraud on the market is an enormous task, overshadowing individual questions. The court finds also that a class action is a superior method of adjudicating this controversy. This is a (b)(3) class, and class members with a strong interest in controlling their own litigation can

opt out of the class. The individual litigation already pending has been brought, in some instances, by plaintiffs who allege direct reliance on statements, not only on the integrity of the market. In any event, the apparent size of the class is sufficiently great that the pendency of several individual suits has little bearing on the desirability of a class action. Arguing strongly in favor of certification are the desirability of litigating this controversy only once, in one forum, and the court's expectation that this class action will be manageable.

## STATUTES OF LIMITATION

Loeb Rhoades argues that Healy's claim, and those of the class members, are barred by applicable statutes of limitation. Primarily, Loeb Rhoades contends that the limitation periods for these claims were not tolled by McNichols' action until he first asserted a fraud-on-the-market theory in 1981. Loeb Rhoades does not appear to argue that Healy is subject to an atypical limitations defense, nor does Loeb Rhoades appear to argue that the limitation periods are relevant to setting some kind of cut-off date for class membership; Loeb Rhoades appears to argue simply that the claims of the whole class, including Healy, are untimely.

■ Of course, time-barred claims are not revived by their assertion in a class action. *E.g., Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). This does not mean that the court should reach out to rule upon a limitations defense when considering a motion for class certification, any more than it should reach out to rule upon some other type of defense. Loeb Rhoades' limitations defenses do not appear to be particularly relevant to class certification, since they probably will apply in the same way to each class member. If Loeb Rhoades' limitations defenses clearly would prevail, perhaps the court would decide them now to avoid the expense of class certification. These defenses are not certain to win, however, and the court declines to rule upon them at this point.

In connection with these defenses the parties have noted that the Supreme Court has granted certiorari in *Crown, Cork & Seal v. Parker*, —— U.S. ——, 103 S.Ct. 338, 74 L.Ed.2d 381 (1982). It is possible the Supreme Court will hold that a pending proposed class action tolls a statute of limitation only to the extent of allowing putative class members to intervene after certification is denied, and not to the extent of allowing putative class members to file their own separation actions. The court is aware of no reason why Healy could not have intervened as a class representative in the McNichols action. To avoid any prejudice to the class that might arise from the accident of being certified in a later-filed action instead of in the McNichols action, the court will entertain a motion to grant Healy and the class intervenor status in the McNichols action, which still is pending. By this suggestion the court intends to express no view on the question whether the McNichols action in fact did toll the limitation periods to which the class is subject.

## CLASS DEFINITION

■ Healy seeks to represent all persons who purchased or sold Olympia stock between June 2, 1975 and April 25, 1977, or who purchased Lone Star stock and sold it when it was converted into Olympia pursuant to the merger; Healy would exclude those against whom Loeb Rhoades has filed counterclaims or crossclaims.

The June 2, 1975 beginning date represents the beginning of Bernhardt's fraudulent activities. It is doubtful that market prices incorporated the fraudulent information the same day that Bernhardt began his activities, but the court will accept this beginning date for want of some better date. The court expects that plaintiffs' case will include some proof as to the impact on market prices on various dates throughout the period in question.

The proposed April 25, 1977 ending cut-off date is thirty business days after the SEC suspended trading in Olympia, and is

intended by Healy to allow the market to digest the new information about improprieties in trading. The court selects instead March 14, 1977, the date on which the SEC suspended trading in Olympia. Any purchaser of Olympia between reinstatement of trading and April 25, 1977, Healy's proposed cut-off date, surely stands in a different position from those who purchased before trading was halted. This is not to say that activity after March 14 is irrelevant. For instance, selection of March 14 as a cut-off date does not mean that damages must be computed as of March 14; April 25 ultimately might be found to be the best date for measuring damages. It is clear to the court, however, that any purchaser after March 14, 1977 could not have relied on the integrity of the market in the same way as those who purchased before trading was halted.

The court will include in the plaintiff class those who purchased Lone Star stock on or after August 31, 1976, the date on which Olympia and Lone Star announced their merger plans, subject to shareholder ratification. The court does not agree with Loeb Rhoades that these purchasers must have relied on the Lone Star management's appraisal of Olympia, rather than on the market price of Olympia. The court excludes, however, claims based on purchases of Lone Star before August 31, 1976. Possibly, some purchasers before that date may have known or suspected that a merger would be announced, but proof of such anticipation would involve new and different individual questions not common to most class members. Similar reasons cause the court to reject Healy's suggestions that Lone Star shareholders relied on the price of Olympia in voting to ratify the merger. Allowing the class to present these claims would threaten the manageability of the class action by injecting new fact questions and complicated new legal questions not common to most members of the class.

The court will include in the class those who purchased and sold Olympia during the period in question and those who only purchased during this time, but the court will not include those who only sold during the period in question. The injury alleged by Healy derives from his purchase of Lone Star and Olympia in reliance on Olympia's artificially inflated prices. His sales of Olympia are relevant to issues such as damages, but the injury he alleges flows from his purchases during the period. Those who purchased Olympia before June 2, 1975, but who sold Olympia during the period in question may have been injured in some way by the alleged fraud, but this injury would be significantly different from the injury alleged by Healy, and these persons should not be included in the class.

Healy asks the court to exclude from the class those persons otherwise qualifying for class membership who have substantial claims against Loeb Rhoades, and have filed suit against Loeb Rhoades, and have had counterclaims or crossclaims asserted against them by Loeb Rhoades. The court sees no reason to make this exclusion; those meeting these conditions can opt out of the class if they wish. On McNichols' motion for class certification, Loeb Rhoades cited *Cotchett v. Avis Rent A Car System, Inc.,* 56 F.R.D. 549 (S.D.N.Y.1972), for the proposition that the existence of these counterclaims counseled against certification. In *Cotchett,* unlike this case, the counterclaim was asserted against the class as class counterdefendants. Thus, those who failed to opt out of the plaintiff class would be subject to liability as class counterdefendants. No such danger is present here, as the counterclaims are asserted against identified individuals.

## CONCLUSION

The court notes that Healy has not set out in complete detail a plan for trying this class action. The court does not anticipate any unusual difficulties, but should any such problems in managing the litigation arise, the court will consider modification or decertification of the class.

Accordingly, the court certifies as a plaintiff class all persons who purchased Olympia Brewing Company common stock during the period beginning June 2, 1975 and end-

ing March 14, 1977, and all persons who purchased Lone Star Brewing Company common stock after August 31, 1976 and converted it into Olympia Brewing Company common stock when Olympia Brewing Company acquired Lone Star Brewing Company. This certification is conditioned on Mr. Joyce's withdrawal as McNichols' attorney. The parties shall submit an agreed draft class notice (or Healy's proposed notice and Loeb Rhoades' objections) by August 10, 1983.

It is so ordered.