**In re Michael LEBNER, Debtor.**

**Martin SANTA, Plaintiff,**

**v.**

**Michael LEBNER, Defendant.**

**Bankruptcy No. 95–13971–JNF.
Adv. No. 95–1528.**

United States Bankruptcy Court,
D. Massachusetts.

May 21, 1996.

---

Joseph I. Schindler, Klieman, Lyons, Schindler, Gross & Pabian, Boston, MA, for debtor-defendant Lebner.

Richard F. Benway, Benway & Harrington, Westwood, MA, for plaintiff Santa.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the Debtor's Motion for Summary Judgment (the "Motion") and the Opposition to the Motion filed by the Plaintiff, Martin Santa ("Santa" or the "Plaintiff"). The Plaintiff purports to act on behalf of a class, whose identity is not identified in the caption of this adversary proceeding. The Plaintiff filed the above-referenced complaint on September 7, 1995, seeking a determination that a debt in the sum of $78,451.00, resulting from a default judgment entered against Michael Lebner ("Lebner" or the "Debtor") by the Massachusetts Superior Court, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

On October 30, 1995, the Debtor filed a "Motion to Dismiss the Plaintiff Martin Santa's Complaint in Its Entirety or, in the Alternative, to Dismiss So Much Thereof as Purports to Set Forth certification. *See* Fed. R.Civ.P. 23, made applicable to this proceeding by Fed.R.Bankr.P. 7023.[1] The Plaintiff

---

1. Fed.R.Civ.P. 23 provides in relevant part the following:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequi-

sites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of

filed an opposition to the Motion to Dismiss, and the Court heard the matter on March 21, 1996.

At the hearing, counsel to the Plaintiff filed a "Motion for Substitution Because of Death of Plaintiff," pursuant to which John Santa sought leave to substitute himself as Plaintiff in "his representative capacity as the administrator of the estate of deceased plaintiff Martin Santa in the above action." The Court granted the Motion.

At the conclusion of the hearing, the Court indicated that it would treat the Debtor's Motion to Dismiss as a motion for summary judgment. The Court ordered the parties to submit any supplemental materials by April 4, 1996.

On April 4, 1996, the Debtor filed a Motion for Summary Judgment, incorporating his original Motion to Dismiss and an affidavit. The Plaintiff amended his opposition, indicating that he intended to substitute it for his original opposition and that he intended to rely upon the affidavit of Martin Santa filed on November 16, 1995, approximately two weeks before his death.

## II. FACTS

On November 28, 1986, the Renbel/Properties of Boston Trust ("Renbel") was created as a nominee trust. Under the trust instrument, the trustee was "[a]lways subject to the direction of the beneficiaries" and the trust could be terminated at any time by the beneficiaries. (Lebner Affidavit, Exhibit 1). The Debtor was one of two original trustees. Subsequently, he became the sole trustee of Renbel.

Also on November 28, 1986, Renbel purchased a large, multi-unit apartment complex in Lexington, Massachusetts known as Emerson Gardens ("Emerson Gardens" or the "Property") from John W. Maloney, Trustee of Emerson Gardens Realty Trust No. 1 (the "Emerson Gardens Realty Trust"). Renbel financed its purchase by granting first and second mortgages on the Property to Bank of Boston and Emerson Gardens Realty Trust respectively. Renbel intended to convert the apartments to condominiums.

According to the Debtor, "[t]he Emerson Gardens Trust Mortgage reflected an adjustment pursuant to which Renbel acquired, but only on paper, the original security deposits and last month's rents that Emerson Gardens Trust had obtained from the Property's tenants." (Lebner Affidavit at ¶ 6). While Renbel was in the process of converting the apartments to condominiums, it continued to solicit tenants for the Property. The Debtor indicated in his affidavit that Renbel, at all times, used the standard form of lease published by the Greater Boston Real Estate Board. According to the Debtor, the standard form of lease contains the following provision:

> In the event that the Lessor is a trustee or a partnership, no such trustee nor any beneficiary nor any shareholder of said trust and no partner, general or limited, or [sic] such partnership shall be personally liable to anyone under any term, condition, covenant, obligation, or agreement expressed herein or implied hereunder or for any claim of damage or cause at law or in equity arising out of the occupancy of said leased premises, the use or the mainte-

---

the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed.R.Civ.P. 23.

nance of said building or its approaches [sic] and equipment.

(Lebner Affidavit at ¶ 8).

Renbel was neither able to sell nor derive adequate revenues from Emerson Gardens because, as the Debtor states in his affidavit, the Town of Lexington issued by-laws retroactive to a date prior to the Renbel's acquisition of the Property that prevented Renbel from converting 60 apartments to condominiums for a five-year period. The by-laws also prohibited Renbel from increasing below market rents to market rents for the same period of time. Moreover, according to the Debtor,

... While Renbel was preoccupied with its struggle for financial viability and as it sought to counter the negative publicity attendant upon the impending foreclosure sale, the Property's tenants stopped paying rent.

... The rent withheld by each individual tenant exceeded the sum of that tenant's security deposit and last month's rent.

(Lebner Affidavit at ¶¶ 10–18).

Renbel was unable to service its debts, and Bank of Boston eventually foreclosed upon its mortgage, selling 112 condominium units at public auction. The Plaintiff purchased a condominium ("Unit No. 1") from Bank of Boston on October 24, 1990, which at the time was occupied by a tenant, Paula Nugent ("Nugent"). According to Santa, Nugent had paid the sum of $250.00 to John W. Maloney, Trustee of Emerson Gardens Realty Trust. Nugent demanded the return of the deposit from Santa, and Santa paid her $250.00 on May 1, 1991. Santa, in turn, demanded from Renbel the sum of $250.00 and the last month's rent paid by Nugent, although Santa did not produce evidence that he either reimbursed Nugent for the rent she paid for the last month of her tenancy or permitted her to occupy Unit 1 for one month without

collecting rent. (Santa Superior Court Affidavit at ¶¶ 5–7, Exhibit 2 to Lebner's Affidavit).[2]

On January 29, 1991, prior to making demand on Renbel, Santa commenced an action against the Debtor personally and as trustee of Renbel in Middlesex County Superior Court "[o]n behalf of himself and all other present owners of the units of the said condominium complex." (Superior Court Complaint, Exhibit 3 to Lebner's Affidavit).[3] Santa alleged in his complaint the following:

... [s]ince the number of owners approximates 80, it is impractical to bring all such owners before the court; there are questions of law and fact presented herein which are common to the entire class of persons owning units; the claims of the plaintiff herein are typical of the claims of the class; and the plaintiff will fairly and adequately protect the interests of said class.

... The prosecution of separate actions by the members of the class would create a risk of adjudications with respect to such individual members which would as a practical matter dispose of the interest of other members not a party to such adjudications or substantially impair or impede their ability to protect their interest.

... The interests of justice would be best served by the Court declaring this action to be a class action pursuant to M.R.Civ. P.Rule 23.

(Superior Court Complaint, Exhibit 3 to Lebner's Affidavit). Santa's complaint in the Superior Court contained a specific allegation that Renbel had no disclosed beneficiaries, "thereby making it a nominee trust." Santa also alleged that the Debtor, as trustee of Renbel, was "personally liable for the obligations of said trustee [sic] as well as his own actions." The complaint contained nine counts, including the following: money had

---

2. At the hearing, the Debtor and the Plaintiff, through their counsel, agreed that Renbel was the lessor on the lease with Santa's predecessor. However, neither party could produce the lease at issue. In view of Santa's affidavit filed in the Superior Court, indicating that Emerson Gardens Realty Trust was Nugent's original landlord, the parties' recollection that Renbel was the lessor was erroneous.

3. The Plaintiff also filed an Amended Complaint. The Complaint and Amended Complaint differ only with respect to allegations in support of the Plaintiff's request for trustee process against the Town of Lexington.

and received, conversion, breach of an implied contract, unjust enrichment, breach of duty as trustee, commingling of security deposits with accounts held by the Debtor and Renbel and breaches of statutory duties imposed by M.G.L. c. 186, § 15B.

At about the time that he filed his state court complaint, Santa filed a "Motion for Determination that Action is Maintainable as Class Action" (the "Class Action Motion"). On February 7, 1991, after hearing, the state court granted the Motion.

On September 10, 1991, the Debtor filed a Motion for Summary Judgment in the state court, along with a memorandum in which he argued that as a trustee he was free from personal liability for any acts or omissions of Renbel, except those acts or omissions that would constitute a willful breach of trust. Santa opposed the Motion for Summary Judgment. On January 8, 1992, the Superior Court entered an order, issued in the form of a Clerk's Notice, that provided the following:

> Motion # 20 of deft's for summary judgment is after hearing DENIED Plff was liable to his tenant under G.L. c. 186 sec. 15B. See: Kinton et al [sic] v. Demetrion et al 19 Mass.App.Ct. 948 (1985). The mortgage foreclosure did not interrupt this. The plff has standing to seek indemnity against predecessor landlord. (Todd, J.) notices sent.

The order made no reference to Santa's standing as a class representative. The Debtor moved for reconsideration of the order denying his Motion for Summary Judgment. The court denied the motion for reconsideration. In its order, the court again made no reference to Santa's standing as a class representative.

On November 5, 1991, during the course of the state court litigation, Santa took the Debtor's deposition. The Debtor indicated during his deposition that he was the sole trustee of Renbel and one of two beneficiaries. The other beneficiary was Renbel Management Corporation, a corporation in which the Debtor and his brother held one hundred percent of the stock. During the Debtor's deposition the following colloquy took place:

Q. ... when you were acting in your capacity as trustee of Renbel Properties of Boston Trust you were acting largely for your own beneficial interest in that entity, is that not correct?

A. My counsel at the time advised me that Tim Harrington and Charlene Kasper resigned their beneficial interests that in order to maintain my protection in the trust I can't be the only beneficiary and the only trustee, so he set up—You know, the question is really beyond my understanding of what it all means. My understanding was that it was set up this way so I wouldn't be the only trustee and the only beneficiary.

Q. ... you state, "That I have not exercised any personal control over the management of the trust or the trust property." Could you explain that to us?

A. I am acting as trustee of the trust.

* * *

Q. If you did not exercise personal control in the management of the trust, who did?

A. The trustee.

Q. And you were the trustee?

A. That's right, I am the trustee.

At his deposition on November 5, 1991, the Debtor admitted that Renbel did not open a checking account for security deposits when it acquired the property from Emerson Gardens Trust and that Renbel did not segregate security deposits or last months' rents that came into its possession after it acquired the Property. The Debtor also admitted that when interest payments came due on money attributable to security deposits, payments were made from Renbel's general funds.

In addition to taking the Debtor's deposition, Santa also propounded 210 Requests for Admissions seeking information about the security deposit and last month's rent for each of the units in Emerson Gardens. Although Santa characterized the Debtor's responses as admissions that the Debtor personally received and retained $14,700.00 in security deposits and $40,985.00 for last months' rents, this Court's review of the Plaintiff's questions and the Debtor's answers reveals

that the Debtor did not confuse his personal liability with that of Renbel.[4] In other words, the Debtor indicated that Renbel, not he, received the deposits and rents.

On or around May 18, 1992, Santa filed in the state court a "Reapplication under Mass. R.Civ.P. 33(a) as Amended," seeking entry of judgment against the Debtor. Plaintiff's counsel, in an affidavit filed in conjunction with the Reapplication, indicated that interrogatories were served on the Debtor in hand on November 25, 1991, that the Debtor had failed to timely answer the interrogatories, that Plaintiffs' application for final judgment for relief was served on Defendant by hand on April 15, 1992, and that the time period for filing a response to the application had also expired without service of answers to the interrogatories. (Benway Affidavit filed in the Superior Court, Exhibit 5 to Lebner's Affidavit). On May 19, 1992, the Superior Court entered judgment in favor of Santa and against the Debtor.

On or around July 10, 1992, Santa filed an affidavit in the Superior Court action in which he stated under the pains and penalties of perjury the following:

> The defendant Michael Lebner admits he collected $14,700.00 in security deposits which he retained. (See Defendant's Response to Plaintiff's Request for Admissions.)

> The defendant Michael Lebner admits he collected $40,985 as last months rent [sic] which he retained. (See Defendant's Response to Plaintiff's Request for Admissions.)

> The memorandum of damages provided by Mr. Benway, which I have examined, is true and correct.

(Santa Affidavit filed in the Superior Court action, Exhibit 7 to Lebner's Affidavit). The Memorandum of Damages prepared by Santa's counsel contained the following summary of damages requested against "both defendants jointly and severally":

| | |
|---|---|
| Count I (Money Had and Received) | $55,685 (Both Security Deposits and Rent) |
| Count II (Conversion) | $55,685 (Both Security Deposits and Rent) |
| Count III (Contract) | $55,685 (Both Security Deposits and Rent) |
| Count IV (Unjust Enrichment) | $55,685 (Both Security Deposits and Rent) |
| Count V (Breach of Duty of Trustee) | $55,685 (Both Security Deposits and Rent) |
| Count VI (Commingling Lebner) | $14,700 (Security Deposits) |
| Count VII (Commingling Trust) | $14,700 (Security Deposits) |
| Count VIII (Statutory Duty) | $14,700 (Security Deposits) |
| Count IX (Statutory Duty) | $40,985 (Last Months [sic] Rent) |

(Benway Affidavit filed in the Superior Court action, Exhibit 7 to Lebner's Affidavit).

On or about July 14, 1992, the Superior Court entered a "Judgment by Default upon Assessment of Damages by the Court (Mass. R.Civ.P. 55(b)(2)[) ]" in the sum of $55,685.00, with interest from January 29, 1991 in the sum of $9,670.81, plus attorney's fees in the sum of $13,096.00. The judgment, which contained a specific reference to Mass. R.Civ.P. 33A [sic], was entered against the Debtor "personally and as trustee of Renbel/Properties of Boston Trust." The Superior Court's judgment did not refer specifically to any of the nine counts of the Amended Complaint.

On June 9, 1995, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On Schedule F, the Debtor listed Santa as the holder of an unsecured claim in the sum of $78,452.00. On September 7, 1995, Santa timely filed the above-captioned adversary proceeding against the Debtor under 11 U.S.C. § 523(a)(4). The Plaintiff, in his complaint, referenced the litigation in the Superior Court and reiterated allegations pertaining to the Debtor's personal liability for security deposits and last months' rents received by him for rental property because of his failure to comply with M.G.L. c. 186, § 15B(5), (7A).[5] Without asking the Court to either certify a class or

---

4. Examples of the questions and answers follows:

*REQUEST NO. 1*
   The Trust received or was credited $250 security deposit of Unit No. 1.
*RESPONSE NO. 1*
   Admitted.

*REQUEST NO. 2*
   The Trust has not paid the $250 security deposit to the tenant or to the new owner of Unit 1.
*RESPONSE NO. 2*
   Admitted.

5. Section 15B(5) provides the following:
   Whenever a lessor who receives a security deposit transfers his interest in the dwelling

apply principles of collateral estoppel to the Superior Court's class certification and default judgment, the Plaintiff asked this Court to "determine that the judgment debt of $78,451 is nondischargeable." Santa merely alluded to the finality of the Superior Court judgment.

> unit for which the security deposit is held, whether by sale, assignment, death, appointment of a receiver or trustee in bankruptcy, or otherwise, the lessor shall transfer such security deposit together with any interest which has accrued thereon for the benefit of the tenant who made such security deposit to his successor in interest, and said successor in interest shall be liable for the retention and return of said security deposit in accordance with the provisions of this section from the date upon which said transfer is made; provided however, that the granting of a mortgage on such premises shall not be a transfer of interest. The successor in interest shall, within forty-five days from the date of said transfer, notify the tenant who made such security deposit that such security deposit was transferred to him and that he is holding said security deposit. Such notice shall also contain the lessor's name, business address, and business telephone number, and the name, business address, and business telephone number of his agent, if any. Said notice shall be in writing.
> Upon such transfer, the lessor or his agent shall continue to be liable with respect to the provisions of this section until:
> (a) there has been a transfer of the amount of the security deposit so held to the lessor's successor in interest and the tenant has been notified in writing of the transfer and of the successor in interest's name, business address and business telephone number;
> (b) there has been compliance with this clause by the successor in interest; or
> (c) the security deposit has been returned to the tenant.
> In the event that the lessor fails to transfer said security deposit to his successor in interest as required by this subsection the successor in interest shall, without regard to the nature of the transfer, assume liability for payment of the security deposit to the tenant in accordance with the provisions of this section; provided however, that if the tenant still occupies the dwelling unit for which the security deposit was given, said successor in interest may satisfy such obligation by granting the tenant free use and occupancy of the dwelling unit for a period of time equivalent to that period of time for which the dwelling unit could be leased or occupied if the security deposit were deemed to be rent....

M.G.L. c. 186, § 15B(5).

Section 7A provides in relevant part the following:

> Whenever a lessor who receives rent in advance for the last month of tenancy transfers

## III. DISCUSSION

### A. Collateral Estoppel

▮ Resolution of the various issues raised in this adversary proceeding turns on the applicability of collateral estoppel. In *Nottingham Partners v. Trans–Lux Corp.,*

> his interest in the dwelling unit for which the rental advance was received, whether by sale, assignment, death, appointment of a receiver or trustee in bankruptcy, or otherwise, the lessor shall credit an amount equal to such rental advance together with any interest which has accrued thereon for the benefit of the tenant who made such rental advance, to the successor in interest of such lessor, and said successor in interest shall be liable for crediting the tenant with such rental advance, and for paying all interest accrued thereon in accordance with the provisions of this section from the date upon which said transfer is made; provided however, that the granting of a mortgage on such premises shall not be deemed a transfer of interest. The successor in interest shall, within forty-five days from the date of said transfer, notify the tenant who made such rental advance that such rental advance was so credited, and that such successor has assumed responsibility therefor pursuant to the foregoing provision. Such notice shall also contain the lessor's name, business address, and business telephone number, and the name, business address, and business telephone number of the his agent, if any. Said notice shall be in writing.
> Upon such transfer, the lessor or his agent shall continue to be liable with respect to the provisions of this section until: —(a) there has been a credit of the amount of the rental advance so held to the lessor's successor in interest and the tenant has been notified in writing of the transfer and of the successor in interest's name, business address, and business telephone number; (b) there has been compliance with this clause by the successor in interest; or (c) the rental advance has been credited to the tenant and all accrued interest has been paid thereon.
> In the event that the lessor fails to credit said rental advance to his successor in interest as required by this subsection, the successor in interest shall, without regard to the nature of the transfer, assume liability for crediting of the rental advance, and payment of all interest thereon to the tenant in accordance with the provisions of this section; provided however, that if the tenant still occupies the dwelling unit for which the rental advance was given, said successor in interest may satisfy such obligation by granting the tenant free use and occupancy of the dwelling unit for a period of time equivalent to the period of time covered by the rental advance....

*Id.* § 7A.

925 F.2d 29 (1st Cir.1991), the court stated the following:

> It is black letter law that collateral estoppel can apply to preclude the relitigation in federal court of issues previously determined in state court. In ascertaining whether issue preclusion flows as a consequence of previous state court litigation, a federal court must look to state law.

925 F.2d at 32 (citations omitted). In Massachusetts, " 'when an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment the determination is conclusive in a subsequent action between the parties whether on the same or a different claim.' " *Cousineau v. Laramee*, 388 Mass. 859, 863 n. 4, 448 N.E.2d 756 (1983) (citing Restatement (Second) of Judgments § 27 (1982)). *See also Foster v. Evans*, 384 Mass. 687, 429 N.E.2d 995 (1981).[6] The Court is called upon to determine whether collateral estoppel applies to both the Superior Court's class action certification and the default judgment entered against the Debtor.

### B. *Class Action*

■ The first issue that the Court must determine is whether the state court's class certification binds this Court regardless of whether the state court judgment is entitled to collateral estoppel effect. The Court finds that for the Plaintiff to proceed as a class representative he must proceed under Fed. R.Bankr.P. 7023, which makes Fed.R.Civ.P. 23 applicable in adversary proceedings. Because Mass.R.Civ.P. 23 and Fed.R.Civ.P. 23

are different procedural rules,[7] this Court is bound to follow federal procedural law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See also Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1140–41, 14 L.Ed.2d 8 (1965); *In re Peters*, 90 B.R. 588 (Bankr.N.D.N.Y.1988).

■ The majority of courts addressing the issue of the permissibility of class actions in discharge litigation under section 523(a) has determined that class actions are permissible. *See e.g. In re Cohen*, No. 95–10573DAS, 1995 WL 346948 (Bankr.E.D.Pa. June 5, 1995); *In re Iommazzo*, 149 B.R. 767 (Bankr.D.N.J.1993); *In re Livaditis*, 132 B.R. 897 (Bankr.N.D.Ill.1991); *In re Duck*, 122 B.R. 403 (Bankr.N.D.Cal.1990); *In re Roberts*, 81 B.R. 354 (Bankr.W.D.Pa.1987); *In re Sclater*, 40 B.R. 594 (Bankr.E.D.Mich. 1984); *In re Wholesale Furniture Mart, Inc.*, 24 B.R. 240 (Bankr.W.D.Mo.1982). *But see In re Hanson*, 104 B.R. 261 (Bankr.N.D.Cal. 1989). Additionally, collateral estoppel may be used with respect to class certification by a federal court based upon a state court's prior class certification. *Johns v. Rozet*, 141 F.R.D. 211, 214 (D.D.C.1992); *In re Dalkon Shield Punitive Damages Litigation*, 613 F.Supp. 1112 (E.D.Va.1985). *See In re Piper Aircraft Distrib. System Antitrust Litigation*, 551 F.2d 213 (8th Cir.1977); *Lee v. Criterion Ins. Co.*, 659 F.Supp. 813 (S.D.Ga. 1987). However, collateral estoppel does not apply to the issue of class certification "where the factual or legal circumstances relevant to the issue actually decided in the

---

**6.** In *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir.1994), the Court of Appeals for the First Circuit articulated the following test for issue preclusion:

> When there is an identity of the parties in subsequent actions, a party must establish four essential elements for successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment.

(citations omitted). The court added: "An issue may be 'actually' decided even if it is not explicitly decided, for it may have constituted logically

or practically, a necessary component of the decision reached in the prior litigation. *Id.* at 30–31. The state and federal pronouncements of the elements required for the use of collateral estoppel are essentially the same.

**7.** The Reporters' Notes to the 1973 changes to the Massachusetts rule regarding class actions states in relevant part the following:

> Rule 23(b) deletes substantial portions of Federal Rule 23(b) which are unnecessary to state practice....
>
> Unlike Federal Rule 23, the Massachusetts class action rule does not *require* the giving of notice to members of the class; nor does it provide to members of the class the opportunity to exclude themselves....

Mass.R.Civ.P. 23 reporters' note (emphasis supplied).

prior litigation have changed dramatically." *Dalkon Shield*, 613 F.Supp. at 1117.

In the instant case, the Superior Court certified the class shortly after the filing of the complaint. When it granted Santa's Class Action Motion, the Superior Court did not make findings of fact. Furthermore, the Plaintiff did not submit any evidence to satisfy the elements required for the application of collateral estoppel, other than his conclusory affidavit filed in this court. In short, this Court has neither evidence to find that the Debtor was notified of or even present at the hearing on the Class Action Motion nor evidence to find that the issues surrounding the certification of the class by the state court were actually litigated.

■ Moreover, this Court cannot make a finding that each member of the class that was certified by the state court can commence an adversary proceeding under 11 U.S.C. § 523(a)(4). As the court in *Peters* noted,

> [a] predicate to bringing a class action on behalf of creditors in an adversary proceeding, triggering the Fed.R.Civ.P. 23 inquiry, is a finding that each member of the potential class could have brought the adversary proceeding individually. In a dischargeability context, this includes timeliness with regard to the filing of an individual proof of claim and the cause of action under Code § 523.

90 B.R. at 597 (citing *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir. 1976)); *Healy v. Loeb Rhoades & Co.*, 99 F.R.D. 540, 543 (N.D.Ill.1976). In the instant case, none of the class members were identified by either the Debtor or Santa and none received notice of the Debtor's bankruptcy petition or the deadline for filing complaints under 11 U.S.C. §§ 523, 727. Because the deadline for filing nondischargeability complaints has passed, the predicate articulated by the court in *Peters* cannot be satisfied.[8]

Additionally, as discussed below, although Santa has standing as a subrogee of Nugent

to bring this adversary proceeding under section 523(a)(4) for violations of G.L. c. 186, § 15B, the Court cannot make a similar finding with respect to other class members. The Court has no evidence as to which unit owners paid their tenant's security deposit and acquired subrogation rights or which unit owners were tenants prior to their acquisition of their units.

The circumstances surrounding class certification have changed dramatically since February 7, 1991 when the state court certified the class action. The Debtor's bankruptcy filing on June 9, 1995 and the expiration of the time within which complaints under section 523(a)(4) can be filed after the consideration of class certification. Santa's interests and those of the other class members diverge because of the effect of 11 U.S.C. § 523(a)(3) on the dischargeability of claims other than Santa's. Consequently, collateral estoppel does not enable Santa to proceed as a class representative. Accordingly, this Court shall not consider any claims other than those brought on behalf of Santa in his individual capacity by the administrator of his estate.

### C. The Default Judgment

■ The Court next must determine whether collateral estoppel applies to the judgment of the Superior Court and operates as a bar to the discharge of the Debtor's obligation to Santa. Specifically, the Court must decide whether the issues determined by the state court are the same as the ones before this Court and whether the issues were actually litigated. Upon consideration of state court proceedings and the law under section 523(a)(4), this Court concludes that collateral estoppel should not apply to the instant proceeding.

In *Brixius v. Christian (In re Christian)*, 172 B.R. 490 (Bankr.D.Mass.1994), Bankruptcy Judge Boroff analyzed G.L. c. 186, § 15B in the context of a complaint under section 523(a)(4) in which the plaintiff maintained that the debtor was collaterally estopped from challenging a Superior Court

---

**8.** No deadline has been set for the filing of proofs of claim. The Chapter 7 Trustee has not filed a Report of No Distribution. Therefore, the possi-

bility remains that assets may be liquidated for distribution to creditors.

judgment with respect to both the plaintiff's security deposit and last month's rent. Judge Boroff determined that M.G.L. c. 186, § 15B creates fiduciary relationships between residential landlords and tenants with respect to security deposits and last months' rents.

Judge Boroff began his analysis by making the following points: 1) to prevail under section 523(a)(4), a plaintiff must establish by a preponderance of the evidence that the debtor committed fraud or defalcation in a fiduciary capacity, *id.* at 495; 2) a defalcation is merely "a failure to account for money held in a fiduciary capacity and does not require a showing of intentional wrong-doing" *id.* (citing *Hoff v. Carroll (In re Carroll),* 140 B.R. 313, 316 (Bankr.D.Mass.1992), and *Kwiat v. Doucette (In re Kwiat),* 81 B.R. 184, 189 (D.Mass.1987)); 3) the determination of "fiduciary capacity" is a federal question limited to express or technical trusts, not implied or constructive trusts or trusts *ex malificio, id.* (citing *Davis v. Aetna Acceptance Corp.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934)); and 4) state law is relevant to the determination of whether a fiduciary relationship exists and, if a state statute is at issue, the statute "must define the trust *res,* spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt." *Id.*

Applying these principles to G.L. c. 186, § 15B, and relying upon *In re Marchiando,* 13 F.3d 1111 (7th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994), Judge Boroff concluded that under Massachusetts law a lessor's fiduciary duties

arise upon receipt of a security deposit, not at the moment that there is failure to remit the proceeds to the tenant. *Christian,* 172 B.R. at 497.[9] He, therefore, held that "Chapter 186, § 15B ... imposes fiduciary duties on the residential landlord for the benefit of the tenant for nondischargeability purposes under § 523(a)(4)." *Id.*

■ While concluding that the statute imposed fiduciary duties with respect to both security deposits and last months' rents, the court in *Christian* confined its analysis to the statutory scheme concerning security deposits. With respect to security deposits, Judge Boroff determined that a landlord is responsible for the following:

(1) to maintain a record of the security deposit available for inspection by the tenant; (2) *to hold the security deposit in a separate interest bearing account;* (3) to provide to the tenant, within 30 days of receiving the security deposit, a receipt indicating the name and location of the bank as well as the amount and account number of said deposit.

172 B.R. at 497 (emphasis supplied). Unlike the provisions regarding security deposits, a landlord need not hold the rent for the last month of the tenancy in a "separate interest bearing account in a bank, located within the commonwealth under such terms as will place such deposit beyond the claim of creditors of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for its transfer to a subsequent owner of said property." *Compare* G.L. c. 186, § 15B(2)(a) (last months' rents) *with* § 15B(3)(a) (security deposits).[10]

**9.** He also noted the "inequality of relation" between landlords and tenants and "the legislature's concern for the welfare of residential tenants who are generally in an inferior bargaining position and find traditional avenues of legal redress relatively useless and costly." 172 B.R. at 497 (citations omitted). Additionally, Judge Boroff determined that the concern expressed by the court in *Marchiando* about "giving state legislatures unfettered discretion to declare certain contractual relations with the state 'fiduciary' in nature" was unwarranted. *Id.* at 498.

**10.** Section 15B(2)(a) provides in relevant part the following:

Any lessor or his agent who receives, at or prior to the commencement of a tenancy, rent

in advance for the last month of the tenancy from a tenant or prospective tenant shall give to such tenant or prospective tenant at the time of such advance payment a receipt indicating the amount of such rent, the date on which it was received, its intended application as rent for the last month of the tenancy, the name of the person receiving it and, in the case of an agent, the name of the lessor for whom the rent is received, and a description of the rented or leased premises, and a statement indicating that the tenant is entitled to interest on said rent payment at the rate of five per cent per year or other such lesser amount of interest as has been received from the bank where the deposit has been held payable in accordance with the provisions of this clause, and a state-

In *Christian*, the court concluded that collateral estoppel applied but did not discuss the rationale for the determination because of the absence of any factual disputes. The plaintiffs/tenants in that case moved for and were granted summary judgment against the debtor/landlord by the Superior Court. Although the judgment was against the debtor and Prospect Realty, a business trade name pursuant to which the debtor conducted business, no issues were raised as to whether the debtor was personally liable for the judgment or whether the merits were actually litigated.

Applying the principles of collateral estoppel to the instant case, the Court must decide whether the issue of the Debtor's personal liability, either as the trustee or as the beneficiary of Renbel, was actually litigated in the state court. Unlike the situation in *Christian*, the Debtor was not a party to the lease at issue, which was between Emerson Gardens Realty Trust and Nugent. In addition, the state court judgment was entered as a sanction for failure to comply with a discovery request.[11] Accordingly, this Court must decide whether collateral estoppel bars the

---

ment indicating that the tenant should provide the lessor with a forwarding address at the termination of the tenancy indicating where such interest may be given or sent.

Any lessor or his agent who receives said rent in advance for the last month of tenancy shall, beginning with the first day of tenancy, pay interest at the rate of five per cent per year or other such lesser amount of interest as has been received from the bank where the deposit has been held. Such interest shall be paid over to the tenant each year as provided in this clause; provided however, that in the event that the tenancy is terminated before the anniversary date of such tenancy, the tenant shall receive all accrued interest within thirty days of such termination. Interest shall not accrue for the last month for which rent was paid in advance. At the end of each year of tenancy, such lessor shall give or send to the tenant from whom rent in advance was collected a statement which shall indicate the amount payable by such lessor to the tenant. The lessor shall at the same time give or send to such tenant the interest which is due or shall notify the tenant that he may deduct the interest from the next rental payment of such tenant. If, after thirty days from the end of each year of the tenancy, the tenant has not received said interest due or said notice to deduct the interest from the next rental payment, the tenant may deduct from his next rental payment the interest due. If the lessor fails to pay any interest to which the tenant is then entitled within thirty days after the termination of the tenancy, the tenant upon proof of the same in an action against the lessor shall be awarded damages in an amount equal to three times the amount of interest to which the tenant is entitled together with court costs and reasonable attorneys fees.

(b) Any lessor or his agent who receives a security deposit from a tenant or prospective tenant shall give said tenant or prospective tenant at the time of receiving such security deposit a receipt indicating the amount of such security deposit, the name of the person receiving it and, in the case of an agent, the name of the lessor for whom such security deposit is received, the date on which it is received, and a description of the premises leased or rented.

Said receipt shall be signed by the person receiving the security deposit.

(c) Any lessor of residential real property, or his agent who accepts a security deposit from a tenant or prospective tenant shall, upon receipt of such security deposit, or within ten days after commencement of the tenancy, whichever is later, furnish to such tenant or prospective tenant a separate written statement of the present condition of the premises. . . .

(d) Every lessor who accepts a security deposit shall maintain a record of such security deposits received. . . . Said record shall be available for inspection upon request of a tenant. . . .

M.G.L. c. 186, § 15B(2)(a)–(d). Section (3)(a) provides the following:

Any security deposit received by such lessor shall be held in a separate interest bearing account in a bank, located within the commonwealth under such terms as will place such deposit beyond the claim of creditors of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for its transfer to a subsequent owner of said property. A receipt shall be given to the tenant within thirty days after such deposit is received by the lessor which receipt shall indicate the name and location of the bank in which the security deposit has been deposited and the amount and account number of said deposit. Failure to comply with this paragraph shall entitle the tenant to immediate return of the security deposit. . . .

*Id.* at § (3)(a).

11. Rule 33(a) provides in relevant part the following:

. . . for failure to file timely answers to interrogatories . . . the interrogating party may file a written application, serving a copy thereof in accordance with Rule 5(a), specifying the failure and requesting that final judgment be entered for relief or dismissal (as appropriate). Upon filing of such application, the clerk shall notify all parties that final judgment for relief or dismissal will be entered unless the answers be filed either within 30 days from the date of the notice or prior to the filing of a reapplica-

Debtor from litigating his personal liability under G.L. c. 186, § 15B for the amount of the judgment. Under the *Christian* rationale, if the Court were to determine that the Debtor and Renbel were in effect alter egos of one another or that as trustee of Renbel the Debtor was liable for its obligations, the Debtor would owe a fiduciary duty to Renbel's tenants at least with respect to the security deposits.

Several considerations complicate the analysis. In the first place, Renbel was the successor-in-interest to Nugent's original landlord, Emerson Gardens Realty Trust. Moreover, the Debtor maintains that Renbel owes no money to any tenants because the tenants ceased paying rents and Renbel set-off the rents and security deposits to satisfy the amounts outstanding, which, according to the Debtor, exceeded the sums Renbel owed. Additionally, the Superior Court did not refer to particular counts of the Plaintiff's amended complaint when it entered judgment against the Debtor and Renbel. Finally, this Court is not persuaded that as a matter of law a fiduciary relationship is created with respect to the last months' rents as opposed to security deposits under G.L. c. 186, § 15B. Although there can be no dispute that Renbel violated the provisions of G.L. c. 186, § 15B with respect to its handling of both security deposits and last months' rents—the Debtor conceded as much during his deposition—the issues decided by the state court in entering a default judgment on the Plaintiff's Reapplication were different than the issue that this Court must decide under section 523(a)(4). Because the state court denied the Debtor's motion for summary judgment, an indication only that there were facts in dispute, but did not enter summary judgment in favor of the Plaintiff or conduct a trial on the merits, the Court rules that the issue of the Debtor's personal liability to Santa was not actually litigated in the state court and that, therefore, collateral estoppel does not apply in this proceeding under 11 U.S.C. § 523(a)(4).

### D. *Summary Judgment*

■ The Debtor maintains that a trial is unnecessary to unravel the instant dispute. He argues that he is entitled to summary judgment because Santa cannot possibly establish any contractual or statutory liability in view of the standard form lease excusing the Debtor in his capacity as trustee of Renbel from any such liability to Renbel's tenants. He further argues that the Renbel trust instrument contains language precluding his personal liability.

■ The Court must determine whether the Debtor, as trustee of a nominee trust, would be liable for the debts of the trust under a lease, regardless of whether the lease or trust instrument disclaims the trustee's liability. Under the common law of Massachusetts, "a trustee is personally liable on a contract the trustee signs on behalf of a trust unless it is agreed that the party entering the contract with the trustee shall look only to the trust's assets for payment or damages." *First Eastern Bank, N.A. v. Jones,* 413 Mass. 654, 662, 602 N.E.2d 211 (1992).[12] In *Apahouser Lock and Security Corp. v. Carvelli,* 26 Mass.App.Ct. 385, 386, 528 N.E.2d 133 (1988), the court determined that the trustees of a nominee trust were personally liable for a debt of the trust where the record established that the trustees "owned and controlled the property of the trust estate...." The Debtor admits that the rule set forth in *Jones* applies with equal force to nominee trusts. *See Dolben v. Gleason,* 292 Mass. 511, 198 N.E. 762 (1935); *Larson v. Sylvester,* 282 Mass. 352, 185 N.E. 44 (1933).

For the Debtor to prevail on his Summary Judgment Motion, the Court must find that there are no material facts in dispute, *see*

---

tion for a final judgment for relief or dismissal, whichever is later.

At the expiration of 30 days from the date of notice, or such further time as the parties may agree upon in writing filed in court or the court may allow, the interrogating party may reapply in writing for entry of final judgment for relief or dismissal....

Mass.R.Civ.P. 33(a).

12. In *Jones,* the Supreme Court held that M.G.L. c. 203, § 14A, which limits the personal liability of trustees unless they are "personally at fault," applies to donative trusts associated with probate practice.

Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c), and that the Debtor submitted sufficient evidence for the Court to find that Nugent executed the standard form of lease that, according to the Debtor, Renbel used exclusively. In his affidavit, the Debtor indicated that Renbel always used the standard form of lease published by the Greater Boston Real Estate Board, and Santa did not controvert this evidence. However, Nugent was a tenant of Emerson Gardens Realty Trust before becoming a tenant of Renbel (Santa Affidavit, Plaintiff's Exhibit E at ¶ 5). The Court has no evidence as to the terms of the leases used by the Emerson Garden Realty Trust. Therefore, summary judgment cannot enter.

### E. *Fiduciary Duty between Lebner and Santa*

The Court must also consider whether G.L. c. 186, § 15B creates a fiduciary relationship between the Debtor, assuming his personal liability for the obligations of Renbel, and the Plaintiff. The Debtor argues strenuously against the imposition of such liability. However, the Court has been presented with no evidence that would preclude application of the general rule of subrogation. The general rule of subrogation would enable Santa, who paid the security deposit claim Nugent held against Renbel, to stand in Nugent's shoes as the beneficiary of the trust relationship between her and Renbel, as successor-in-interest to Emerson Gardens Realty Trust. *See* G.L. c. 186, § 15B(5), (7A), and *Vinton v. Demetrion,* 19 Mass.App.Ct. 948, 473 N.E.2d 207 (1985). In other words, the Plaintiff " 'is substituted to all rights and remedies' of the prior claim holder [Nugent] as though the subrogee [Santa] were the prior claim holder." *Old Republic Surety Co. v. Richardson (In re Richardson),* 178 B.R. 19, 22 (Bankr.Dist.Col. 1995). "[W]hether the plaintiff had a prior fiduciary relationship with the debtor is irrelevant." *Id. See also Martin v. Fidelity and Deposit Co. of Maryland (In re Martin),* 161 B.R. 672 (Bankr. 9th BAP 1993); *Baxter v. Flick (In re Flick),* 75 B.R. 204 (Bankr. S.D.Cal.1987). Accordingly, should Santa establish that the Debtor is personally liable for Renbel's obligations as landlord and suc-

cessor-in-interest to Emerson Gardens Trust with respect to Nugent's security deposit and/or last month's rent, then all the remaining elements necessary to sustain an action under 11 U.S.C. § 523(a)(4) will have been satisfied. *Christian,* 172 B.R. at 495.

### IV. CONCLUSION

Upon consideration of the foregoing, the Court hereby grants in part and denies in part the Debtor's Motion for Summary Judgment. The Court grants the Motion to the extent the Debtor seeks a determination that Santa may not proceed as a class representative; the Court denies the Motion to the extent the Debtor seeks entry of judgment in his favor and against Santa.